# EXHIBIT A

{00291191.DOC;}

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

_____ x

522 W. 38th St. NY LLC,

                              Petitioner,


          -against-


NEW YORK HOTEL & MOTEL TRADES COUNCIL,
AFL-CIO,

                              Respondent.

_____ x

*Removed SDNY
07CV8230 (NRB)
Judge Buchwald*

Index No. 0 7112748

Date Purchased: 646-386-3298 *Judge Daul*

**NOTICE OF PETITION**

Petitioner designates New York
County as the place of trial. The
basis of venue is Respondent's
place of business

**Respondent's Address:**

707 Eight Avenue
New York, NY 10036

TO THE ABOVE NAMED RESPONDENT:

     **You are hereby summoned** to answer the verified petition in this action and to serve a

copy of your answer, or, if the petition is not served with this notice of petition, to serve a notice

of appearance, on the petitioners' attorneys within 20 days after the service of this notice of

petition, exclusive of the day of service (or within 30 days after the service is complete if this

summons is not personally delivered to you within the State of New York); and in case of your

failure to appear or answer, judgment will be taken against you by default for the relief

demanded in the Verified Petition.

Dated: New York, New York
       September 20, 2007

BRODY AND ASSOCIATES, LLC
*Attorneys for Petitioner*

By: _____
     Robert G. Brody
     67 Wall Street, Suite 2211
     New York, New York 10005
     203-965-0560

Of Counsel:

     Robert A. Rubenfeld, Esq.
     TODTMAN NACHAMIE
     SPIZZ & JOHNS, P.C.
     425 Park Avenue
     New York, New York 10022
     212-754-9400

**Petitioner's Address**
147-25 Northern Blvd.
Suite 3E
Flushing, NY  11354

**Respondent's Address:**
707 Eighth Avenue
New York, NY  10036

#230990

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

522 W. 38th St. NY LLC,

                                                         **Index No.**

          Petitioner,

                                                 **PETITION TO STAY**
                                             **ARBITRATION**

        -against-
NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO,

          Respondent.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . x

Petitioner, 522 W. 38th St. NY LLC, by its attorneys, Brody and Associates, LLC and Todtman,

Nachamie, Spizz & Johns, P.C., hereby alleges as follows:

    1.  At all relevant times Petitioner, 522 W. 38th St. NY LLC, was and still is a limited

liability company organized and existing under the laws of New York, and authorized to do

business in New York.  Petitioner's principal place of business is 147-25 Northern Blvd., Suite

3E, Flushing, New York 11354.  Petitioner owns the hotel property known as the Best Western

Convention Center Hotel ("Hotel") located at 522-524 West 38th Street, City, County and State

of New York.

    2.  Upon information and belief, the principal place of business of the Respondent Union,

the New York Hotel & Motel Trades Council, AFL-CIO ("Union"), is located at 707 Eighth

Avenue, New York, New York 10036.

    3.  On February 7, 2005, Petitioner, in conjunction with the purchase of the Hotel,

entered an Assignment of Management Agreement ("Assignment") with Unigroup Hotel, LLC

1

("Unigroup"), the former owner of the Hotel. Pursuant to this Assignment, Petitioner agreed to have the Management Agreement between Unigroup and Crossroads Hospitality Management Company LLC, a subsidiary of Interstate Hotels and Resorts, (hereinafter collectively referred to as "IHR"), assigned to Petitioner and assumed all the rights and obligations under the Management Agreement. A copy of the Assignment is attached as Exhibit 1.

4.    Pursuant to Section 3.1 of the Management Agreement, IHR was to "[r]ecruit, employ, relocate, pay, supervise, and discharge all employees and personnel necessary for the operation of the Hotel. Included in the foregoing shall be the determination of all personnel policies." Section 3.1 also granted Petitioner the right to approve the hiring and termination of the Hotel's General Manager. Section 3.2 of the Management Agreement specifically stated that IHR would be the employer of all the employees in the Hotel and that IHR would have no authority to enter into a collective bargaining agreement for the Hotel without the express written approval of Petitioner. A redacted copy of the Management Agreement is attached as Exhibit 2. At all times since the Assignment, IHR has been the sole employer of the employees in the Hotel.

5.    On January 31, 2005, Petitioner and IHR entered an Assumption and Modification of Management Agreement ("Modification"), pursuant to which IHR agreed to consent to the Assignment of the Management Agreement and the parties agreed to certain modifications of the Management Agreement. Among other modifications, Petitioner and IHR agreed to add Section 11.2(D) entitled "Manager's Right to Terminate for Union Issues," which provision immediately stated that IHR acknowledged that Petitioner desired to operate the Hotel union-free. A redacted copy of the Modification is attached as Exhibit 3.

6. Upon information and belief, on or about January 15, 2004, prior to Petitioner's purchase of the Hotel and Assumption of the Management Agreement with IHR, the Union and IHR negotiated and executed a Memorandum of Agreement ("MOA"), under which IHR was bound by the Accretion and Card Count/Neutrality Provisions of the Memorandum of Understanding ("MOU"), dated June 15, 2000 between the Union and the Hotel Association of New York City, Inc. The MOA was retroactive to July 1, 2001 and thus, would cover any hotel in the New York City area that came to be operated or managed by IHR after July 1, 2001. IHR further agreed in the MOA to be bound by the Union's master hotel collective bargaining agreement (known as the Industry-Wide Agreement ("IWA")) as the employer of the employees for those hotels it operated or managed. A copy of the MOA and Addendum IV are attached as Exhibit 4.

7. Upon information and belief, IHR never disclosed the existence of the MOA to Unigroup (Petitioner's assignor), Unigroup never authorized IHR to enter into the MOA with the Union and never entered into any agreement with the Union ratifying or assuming the obligations of the MOA. More significantly, IHR never disclosed the existence of the MOA to Petitioner; Petitioner has never negotiated nor signed any agreement with the Union, nor has it ever authorized IHR to negotiate or sign an agreement with the Union on Petitioner's behalf. Petitioner did not know of the MOA until after the Union began to unionize the employees of the Hotel.

8. The IWA (Article 60, Section B and Addendum IV) contains provisions which require employers to allow the union access to employees on hotel property during non-working hours to solicit union cards and if the Union obtains cards from a majority of the employees, the employer will recognize the union and bargain for a collective bargaining agreement. In addition,

3

Addendum IV provides that the Impartial Chairman ("IC") would resolve any dispute arising out of the IWA and can issue remedial or penal orders to ensure compliance with the IWA. The IC's orders are final and binding.

9. In July or August 2007, Union organizers began talking to the employees of the Hotel for purposes of unionizing them. Upon information and belief, on or about August 3, 2007, the Union requested an emergency hearing before the IC to determine whether the management at the Hotel was violating the neutrality provisions of Article 60 and Addendum IV of the IWA by expressing their opinions about the Union.

10. On August 8, 2007, an emergency hearing before the IC was held. Neither Petitioner nor anyone from IHR's management team appeared at this hearing, but upon information and belief, counsel for IHR did attend this hearing. Petitioner was never advised of this hearing on or before August 8, 2007. At this hearing, the IC determined that management at the Hotel was violating the neutrality provisions and even though IHR was the employer bound by the neutrality agreement, the IC directed Hotel ownership (Petitioner), not just IHR, to cease and desist from further violations. The IC further ordered the Hotel's General Manager to issue an improper, biased (in the Union's favor) written and verbal statement to all employees explaining the violations and management's obligation to remain neutral. These statements were to be read to the employees during working time and were to be posted prominently in the Hotel. A copy of the IC's Consent Award and Required Statement is attached as Exhibit 5.

11. Upon information and belief, on or about August 23, 2007, IHR received notice from the Union that a majority of the Hotel's employees had signed authorization cards and that the Union was requesting the IC conduct an emergency card count (to determine if the Union had

collected union cards from a majority of the Hotel's employees). Upon information and belief, there was no written notice of any pending card count before the IC.

12. On August 24, 2007, the IC held a "card count," at which the IC determined the Union had obtained authorization cards from a majority of the Hotel's employees (at least 12 out of the 22 employees in the bargaining unit) and therefore certified the Union as the exclusive bargaining agent for the employees.

13. On September 7, 2007, Petitioner sent IHR a Notice of Termination, notifying IHR that it would be terminated as managing agent effective on Monday, September 10, 2007 at 3:00 p.m. A copy of the Termination Notice is attached as Exhibit 6. On September 10, 2007, IHR was terminated as the managing agent of the Hotel for its various breaches of its contractual obligations and fiduciary duties. At all times after September 10, 2007, IHR has ceased to be the manager and/or employer of the employees in the Hotel.

14. After IHR was terminated, Petitioner hired another staffing company, United Staffing Group ("United") to hire and employ the employees of the Hotel. Of the 22 employees that were members of the Union, United hired seven housekeepers and two housemen. A majority of United's employees eligible for unionization were not members of the bargaining unit under IHR. Therefore, as a matter of black letter labor law, United can not be considered a successor employer required to recognize and negotiate with the Union.

15. On or about September 12, 2007, the Union sent a notice to Petitioner demanding the Hotel bargain with the Union and produce certain information, including a list of all bargaining employees, employee handbooks and policies, and information on employee benefits. A copy of the Union's Demand is attached as Exhibit 7.

16. On September 12, 2007, Petitioner sent the Union a letter refusing to bargain with the Union on the grounds that IHR, the true employer bound to bargain with the Union, had been terminated, a majority of United's employees were not previously in the bargaining unit at IHR and therefore, it was not bound to recognize and negotiate with the Union. A copy of the September 12, 2007 letter is attached as Exhibit 8.

17. On September 14, 2007, the Union requested an emergency hearing before the IC to determine whether Petitioner had violated the IC's "Award No.s 2007-22 and 2007-20CC by discharging employees and known Union supporters . . ." and "by refusing to provide information requested, bargain with the Union . . . and denying the Union access to the employees." That same day the IC ordered an emergency hearing be held on September 20, 2007, to determine the issues raised by the Union, which was adjourned by the IC until September 26, 2007. A copy of the Union's Demand for Arbitration, the initial IC's Notice of Emergency Hearing and the IC's Notice rescheduling the Hearing are attached as Exhibit 9.

18. On September 18, 2007, the Union sent an Arbitral Subpoena *Duces Tecum*, commanding Petitioner produce certain information and documents at the Emergency Hearing on September 20, 2007. A copy of the Subpoena is attached as Exhibit 10.

19. This Petition is made, pursuant to CPLR 7503(c), to permanently stay the September 20, 2007 Emergency Hearing before the IC (adjourned by the IC to September 26, 2007, based upon the request of IHR), as well as any further hearings before the IC concerning Petitioner and/or United, on the ground that there is no valid agreement between the Union and Petitioner pursuant to which arbitration is required. Petitioner was not a signatory to the MOA, IWA or Addendum IV and did not authorize IHR to enter the MOA on its behalf.

6

WHEREFORE, Petitioner respectfully requests that an order be entered directing that the Emergency Hearing and any further hearings before the Impartial Chairperson be permanently stayed, the subpoena *duces tecum* be quashed and granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
September 20, 2007

ATTORNEYS FOR PETITIONER

Brody and Associates, LLC

By: Robert G. Brody
67 Wall Street, Suite 2211
New York, New York 10005
Tel: (203)965-0560
Please direct all correspondence to:
179 Post Road West
Westport, Connecticut 06880

OF COUNSEL:

Robert A. Rubenfeld, Esq.
Todtman, Nachamie, Spizz & Johns, P.C.
425 Park Ave.
New York, New York 10022
Tel: (212)754-9400

TO:
New York Hotel & Motel Trades Council, AFL-CIO
707 Eighth Avenue
New York, New York 10036

7

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .x

522 W. 38th St. NY LLC,

                    Petitioner,                                    Index No.

                                                                   **VERIFICATION**

        -against-

NEW YORK HOTEL & MOTEL
TRADES COUNCIL, AFL-CIO,

                    Respondent.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .x

STATE OF NEW YORK        )
                         )  ss:
COUNTY OF NEW YORK       )

        I, Jack Cheng, being duly sworn, depose and say:

        I am the President of Petitioner, 522 W. 38th St. NY LLC.  I have read the annexed
Petition, know the contents thereof and the same are true to my knowledge, except those matters
therein which are stated to be alleged on information and belief, and as to those matters I believe
them to be true.  My belief, as to those matters therein not stated upon knowledge, is based upon
a review of the files and records pertaining to this matter.

                                                        _____
                                                             JACK CHENG

Sworn to before me this
19th day of September, 2007

_____
Notary Public

        LISA REITBAUER
NOTARY PUBLIC - STATE OF NEW YORK
            NO. 01HE6012540
    QUALIFIED IN DUTCHESS COUNTY
MY COMMISSION EXPIRES AUG. 31, 20___

# EXHIBIT 1

## ASSIGNMENT OF MANAGEMENT AGREEMENT

**THIS AGREEMENT** made and entered into on the 7th day of February 2005 by and between UNIGROUP HOTEL LLC, a New York Limited Liability Company, whose principal place of business is at 54 Canal Street, 3rd Flr., New York, NY 10002 (hereinafter referred to as Assignor) and 522 W. 38TH ST. NY LLC, a New York Limited Liability Company, whose principal place of business is at 147-25 Northern Blvd., Suite 3E, Flushing, New York 11354 (hereinafter referred to as Assignee)

### RECITALS:

1.  Assignor is the "Owner" referred to in the Management Agreement dated June 6, 2001 for the management and operation of the Hotel located at 522-524 W. 38th Street, New York, New York with Crossroads Hospitality Management Company LLC(Manager) ( hereinafter referred to as the "Management Agreement") .

2.  Assignor wishes to have said Management Agreement assigned to Assignee in connection with the sale and purchase of the Assignor's property located at 522-524 W. 38th Street, New York, New York pursuant to the Contract of Sale dated February 12, 2004 and First Amendment dated November 19, 2004, and Second Amendment dated the date hereof (the purchase transaction);

3.  Assignee acknowledges that Assignee has been given a copy of the Management Agreement and has read the same and has sought any legal advice concerning the same;

4.  The Assignor herein transfers to the Assignee all the rights and obligations for the payment and performance of the provisions therein and that the Assignee agrees to assume all the rights and obligations for the payment of the management fee and the performance of all the terms, conditions and provisions of the Management Agreement.

**NOW THEREFORE,** in consideration of the sum of $10.00 and other good and valuable consideration, the parties agree as follows:

1.  Assignor hereby assigns to Assignee the Management Agreement dated June 6, 2001 with respect to management and operation of the Hotel located at 522-524 W. 38th Street, New York, New York.

2.  The Assignee does hereby assume the obligations pursuant to said Management Agreement including but not limited to the payment of the management fee as set forth in the Management Agreement as of the date hereof.

3. Assignor represents that the Management Agreement is in good standing and has not been modified or amended by Assignor and agrees to indemnify the Assignee for any claims arising out of the Management Agreement which arise from facts prior to the effective date of this Assignment. Assignee agrees to assume all the rights and obligations of Assignor under the Management Agreement and agrees to indemnify the Assignor for any claims arising out of the Management Agreement after the effective date of this Assignment.

4. All notices under this Agreement
   shall be sent to:          Assignee:    522 W. 38th St. NY LLC
                                           147-25 Northern Blvd., Suite 3E
                                           Flushing, New York 11354

                              Assignor:    Unigroup Hotel LLC
                                           54 Canal Street, 3rd Flr.
                                           New York, NY 10002
        and, if applicable,

                              Manager:     Crossroad Hospitality Management
                                           Company
                                           c/o Interstate Hotels Corporation
                                           Foster plaza Ten
                                           680 Andersen Drive
                                           Pittsburgh, PA. 15220

5. Assignor represents to Assignee that Manager is not in default under any of the terms of the Management Agreement; no break in manager's service has occurred; the Management Agreement is in full force and effect, and Assigns is current as to all obligations, accrued or otherwise, under the Management Agreement as of the date hereof.

6. All other terms and conditions of the original Management Agreement shall remain in full force and effect and binding on all parties.

7. Assignor acknowledges that Assignee and Manager are modifying the Management Agreement as of the date hereof, and said modification shall not change Assignor's indemnity to Assignee herein.

Dated this 7th of February 2005

ASSIGNOR:  Unigroup Hotel LLC

By:

Kin Chung Lam

Its Managing Member

ASSIGNEE:    522 W. 38th ST. NY LLC

By:

Show Lan C. Cheng

Its Managing Member

# EXHIBIT 2

## MANAGEMENT

## AGREEMENT
(Best Western)
(West 38th Street, New York, NY )


between


UNIGROUP HOTEL LLC


and


CROSSROADS HOSPITALITY MANAGEMENT COMPANY


June 6, 2001

G:\HOTELS\CROSSRDS\NewYorkBestWestern\MGMTAGMT.1PL.DOC

## MANAGEMENT AGREEMENT

This Management Agreement ("Agreement") is made this 6th day of June, 2001, by and between UNIGROUP HOTEL LLC, a New York limited liability company, whose principal place of business is 54 Canal Street, Third Floor, New York, New York 10002 (hereinafter referred to as "Owner"), and CROSSROADS HOSPITALITY MANAGEMENT COMPANY, a Delaware corporation, whose principal place of business is Foster Plaza Ten, 680 Andersen Drive, Pittsburgh, Pennsylvania 15220 (hereinafter referred to as "Manager").

## RECITATIONS

WHEREAS, Owner is the owner of certain land located at 522 West 38th Street, New York, New York 10001 (the "Land") described in Exhibit A attached hereto, upon which is to be constructed a hotel known as the Best Western Hotel (the "Hotel");

WHEREAS, subject to the terms and provisions of this Agreement, Owner desires to have Manager assist Owner in managing and operating the hotel; and

WHEREAS, Manager is willing to perform such services as agent of and for the account of the Owner in accordance with the terms hereof.

NOW THEREFORE, in consideration of the foregoing recitals and the premises and the mutual covenants herein contained, the parties hereto agree as follows:

## ARTICLE I

## CERTAIN DEFINITIONS

Section 1.1   Accounting Period shall mean each of twelve (12) accounting periods of one (1) calendar month occurring each fiscal year.

Section 1.2   Base Management Fee. The term Base Management Fee as used in this Agreement shall have the meaning set forth in Section 9.1 hereof.

Section 1.3   Fiscal Year. The term Fiscal Year shall mean a Calendar Fiscal Year starting on January 1 and ending on December 31  or portion thereof depending upon the Management Commencement Date  (as defined in Section 1.8) and the termination of this Agreement (as described in Article XI).

Section 1.4   Gross Operating Revenues. The term Gross Operating Revenues as used in this Agreement shall mean all receipts, revenues, income and proceeds of sales of every

G:\HOTELS\CROSSRDS\NewYorkBestWestern\MgmtAgmt.1p1.doc

kind received by Manager directly or indirectly from the operation of the Hotel. Gross Operating Revenues shall exclude all sales and excise taxes and any similar taxes collected as direct taxes payable to taxing authorities; gratuities or service charges collected for payment to and paid to employees; credit or refunds to guests; proceeds of insurance, save and except for proceeds of insurance with respect to use and occupancy or business interruption insurance; lease revenues collected from the leased lounge operation; and proceeds of condemnation.

Section 1.5   Gross Operating Profit.  The term Gross Operating Profit as used in this Agreement shall mean the excess, during each Fiscal Year (and proportionately for any period less than a Fiscal Year), of Gross Operating Revenues over expenses and deductions incurred in the operation of the Hotel by Manager in fulfilling its duties hereunder during such period, determined in accordance with the accounting system established by the Uniform System (except as modified by this Agreement). In arriving at Gross Operating Profit, all expenses shall be proper deductions from Gross Operating Revenues insofar as they relate to the operation of the Hotel including all license fees, and out-of-pocket expenses of employees of Manager or its affiliates such as travel costs, fax, postage, telephone and express mail; provided, however, in arriving at Gross Operating Profit, there shall be no deduction for any of the following fixed charges: property taxes, expenses associated with the Asset Manager and directly related to the Hotel, insurance, capital leases, reserve for replacements and debt service payments. Manager shall not charge hotel for any other out-of-pocket costs, except for unusual or extraordinary items due to a special request from the Owner.

Section 1.6   Incentive Fee.  The term Incentive Fee as used in this Agreement shall have the meaning set forth in Section 9.2 hereof.

Section   1.7   Management   Commencement   Date.   The   term   Management Commencement Date as used in this Agreement shall mean the date Manager assumes management of the Hotel in accordance with the provisions of this Agreement.

Section 1.8   Operating Funds.  The term Operating Funds as used in this Agreement shall have the meaning set forth in Section 6.2 hereof.

Section 1.9   Uniform System.  The term Uniform System as used in this Agreement shall mean the Uniform System of Accounts for Hotels, "Ninth Revised Edition", 1996, as revised and adopted by the Hotel Association of New York City, Inc., from time to time and as modified by applicable provisions of this Agreement.

Other terms are defined in the Recitals and the further provisions of this Agreement, and shall have the respective meanings there ascribed to them.

## ARTICLE II

### ENGAGEMENT OF MANAGER AND
### COMMENCEMENT OF MANAGEMENT OF THE HOTEL

Section 2.1    Engagement of Manager to Manage Hotel.  Owner hereby appoints Manager as Owner's exclusive agent, subject to the terms of this Agreement, to supervise, direct and control the management and operation of the Hotel, and Manager hereby undertakes and agrees to perform, as the agent of and for the account of Owner, all of the services and to comply with all of the provisions of this Agreement, upon all of the terms and conditions hereinafter set forth.

Section 2.2    Management Commencement Date and Pre-Commencement Activities.

A.    Manager shall assume management and operation of the Hotel upon the date the Hotel opens for business, which is expected to be on or about October 1, 2001 (the "Management Commencement Date").

## ARTICLE III

### OPERATION OF THE HOTEL
### AFTER THE MANAGEMENT COMMENCEMENT DATE

Section 3.1    Authority of Manager.  On and after the Management Commencement Date, the Manager shall have the exclusive authority and duty to direct, supervise, manage and operate the Hotel in an efficient and economical manner and to determine the programs and policies to be followed in connection therewith, all in accordance with the provisions of this Agreement and the Annual Business Plan.  Subject to the provisions of this Agreement, Manager shall have the discretion and absolute control in all matters relating to the management and operation of the Hotel.  Without limiting the generality of the foregoing, Manager shall have the authority and duty to:

A.    Recruit, employ, relocate, pay, supervise, and discharge all employees and personnel necessary for the operation of the Hotel.  Included in the foregoing shall be the determination of all personnel policies.  Owner has the right to approve the hiring and termination of the Hotel's General Manager, which approval shall not be unreasonably withheld or delayed.

B.    Establish all prices, price schedules, rates and rate schedules, rents, lease charges, and concession charges.

C.    Administer leases, license and concession agreements for all public space at the Hotel, including all stores, office space and lobby space.  All such leases,

licenses or concessions shall be in Owner's name and may be executed by Manager on Owner's behalf.

D. Negotiate and enter into, on behalf of the Owner, service contracts and licenses required in the ordinary course of business in operating the Hotel provided, however, any contract for a term in excess of one (1) year shall be approved by Owner, which approval shall not be unreasonably withheld or delayed.

Section 3.2 Employees. Manager shall be the employer of all employees in the Hotel. Manager shall have no authority to enter into a collective bargaining agreement for the Hotel without the express written approval of Owner. Owner's and Manager's agents and employees, but excluding any affiliates of Manager who provide consulting services to Manager in connection with the Hotel, shall be acting as the agent of the Owner. Manager shall have complete authority over pay scales and benefit plans, subject to Owner's approval of the Annual Business Plan.

## ARTICLE IV

## OPERATING EXPENSES PAID BY OWNER

Section 4.1 Expenses Incurred by Manager on Behalf of Owner. Everything done by Manager in the performance of its obligations and all expenses incurred under this Agreement shall be for and on behalf of Owner and for its account. All debts and liabilities arising in the course of business of the Hotel are and shall be the obligations of Owner, and Manager shall not be liable for any of such obligations by reason of its management, supervision and operation of the Hotel for Owner. Unless expressly stated herein, neither Manager nor any of its Affiliates shall be obligated to advance any of its own funds to or for the account of Owner, nor to incur any liability unless Owner shall have furnished Manager with funds necessary for the discharge thereof prior to incurring such liability.

## ARTICLE V

## COMPLIANCE WITH LAWS

Section 5.1 Compliance by Manager and Owner After Management Commencement Date. Manager shall make all reasonable efforts, at expense of Owner, to comply with all laws, rules, regulations, requirements, orders, notices, determinations and ordinances of any governing authority, including, without limitation, the state and local authorities, the Board of Fire Underwriters and the requirements of any insurance companies covering any of the risks against which the Hotel is insured. If the cost of compliance exceeds ███████████████ ███████████████████ in any instance, Manager shall promptly notify Owner, and Owner shall promptly provide Manager with funds for the payment of such costs.

**Section 5.2   Owner's Right to Contest or Postpone Compliance.**  With respect to a violation of any such laws or rules, the Owner shall have the right to contest any of the foregoing and postpone compliance pending the determination of such contest, if so permitted by law and not detrimental to the operation of the Hotel, but in such event, Owner shall indemnify and hold harmless Manager from any loss, cost, damage or expense, as a result thereof.

**Section 5.3   Manager's Right to Terminate Agreement.**  Notwithstanding anything in this Agreement to the contrary, if within thirty (30) days of receiving Management Company's written request Owner fails to approve the changes, repairs, alterations, improvements, renewals or replacements to the Hotel which Management Company determines in its reasonable judgment are necessary to  (i) protect the Hotel, Owner and/or Management Company from innkeeper liability exposure; or  (ii) ensure material compliance with any applicable code requirements pertaining to life safety systems requirements; or (iii) ensure material compliance with any application state, local, or federal employment law, including, without limitation, the Americans with Disabilities Act, then Management Company may, notwithstanding the provisions of Section 11.4, terminate this Agreement any time after such thirty (30) day period upon seven (7) days' written notice.

## ARTICLE VI

## AGENCY ACCOUNT, OPERATING FUNDS, AND RESERVE FUND ACCOUNT

**Section 6.1   Agency Account.**  All monies received by Manager in the operation of the Hotel, including the Operating Funds furnished by Owner, shall be deposited in accounts, (collectively called the "Agency Account") in Manager's name, as agent of Owner, in the bank or trust company recommended by Manager and approved by Owner. Such monies shall not be mingled with Manager's other funds. Out of the Agency Account, Manager shall pay all operating expenses of the Hotel, any fees or compensation of any kind due it pursuant to this Agreement and the pre-opening agreement of even date herewith between Owner and Manager (the "Pre-Opening Agreement"), in accordance with the provisions of this Agreement. Withdrawals from accounts established pursuant to this Article VI shall be signed by representatives of the Manager only, provided such representatives are bonded or otherwise insured.

**Section 6.2   Operating Funds.**  As noted in the Pre-Opening Agreement, and thereafter, from time to time if and as required, Owner shall maintain cash in the Hotel accounts ("Operating Funds") sufficient in amount to properly operate the Hotel. If at any time during the initial Term and any Renewal Terms of this Agreement, the Operating Funds on hand fall below ▓▓▓▓▓ (the "Minimum Balance"), Owner shall deposit in the Agency Account additional funds in an amount equal to the difference between the Operating Funds then on hand and the Minimum Balance.

Section 6.3 Initial Cash Flow Expenses. During the initial ninety (90) days during the Initial Term ("Initial Start-Up Operations Period"), Manager anticipates potential negative cash flow as part of the expense of initial operations of the Hotel. In addition to the Minimum Balance, no later than five (5) days prior to the Management Commencement Date, Owner agrees to deposit into the Agency Account an additional amount of █████████████████████ ███████████ ("Surplus Start-Up Working Funds") to provide sufficient working capital during the initial operations of the Hotel. To the extent that Manager reasonably concludes that any excess Surplus Start-Up Working Funds exist and will not be needed to cover future negative cash flow, Manager shall return to Owner such excess Surplus Start-Up Working Funds at the conclusion of the Initial Start-Up Operations Period.

## ARTICLE VII

## BOOKS, RECORDS AND FINANCIAL STATEMENTS

Section 7.1    Accounting System. Manager shall keep full and adequate books of account and other records reflecting the results of operation of the Hotel on an accrual basis, all substantially in accordance with the Uniform System. Manager may perform accounting services at Manager's affiliate's corporate office or at the Hotel. Manager reserves the right to contract, at Owner's expense, with a qualified independent third party for payroll and other services to the extent that such a contract would be cost justified. Except for such books and records as Manager may elect to keep in its affiliate's corporate office or other suitable location pursuant to the operation of centralized accounting services, Manager shall keep the books of account and all other records relating to, or reflecting the operation of, the Hotel at the Hotel and shall be available to Owner and its representatives at all reasonable times for examination, audit, inspection and transcription. All of such books and records, including, without limitation, books of accounts, guest records and front office records, at all times shall be the property of Owner. Upon termination of this Agreement, all the books and records shall be turned over to Owner to ensure the orderly continuation of the operation of the Hotel, but the books and records shall thereafter be available to the Manager at all reasonable times for inspection, audit, examination and transcription.

Section 7.2    Financial Statements. Manager shall deliver to Owner within twenty (20) days after the end of each Accounting Period and within sixty (60) days after the end of each fiscal year the following:

A.    Profit & Loss Statement by Department with Month-End and Year-to-Date Actual and Budget
B.    Balance Sheet
C.    Variance Analysis
D.    Forecast
E.    Reserve Fund/Capital Update
F.    Cash Flow Statement

Any disputes as to the contents of any such statements or any accounting matter hereunder, shall be determined by the independent auditor mutually agreed upon by Owner and Manager (the "Independent Auditor") whose decision shall be final and conclusive on Manager and Owner.

## ARTICLE VIII

### ANNUAL BUSINESS PLAN

Section 8.1    Preparation of Annual Business Plan.  At least forty-five (45) days prior to the end of each Fiscal Year, Manager shall submit an Annual Business Plan for the succeeding Fiscal Year.  The Annual Business Plan shall include:  an operating budget showing estimated Gross Operating Revenues, department profits, operating expenses, and Gross Operating Profit for the forthcoming Fiscal Year for the Hotel; a marketing plan; a cash flow forecast; the budget for replacing Furniture, Fixtures, and Equipment and for making capital improvements; all in reasonable detail and, where appropriate, with the basis for all assumptions expressly set forth.  Owner shall review the Annual Business Plan and either approve or notify Manager of any objections to the Annual Business Plan in writing within ten (10) days of its receipt thereof. Owner's approval of the Annual Business Plan shall not be unreasonably withheld or delayed.

Section 8.2    Annual Business Plan Disputes.  If Manager and Owner are unable to agree upon an Annual Business Plan or any details thereof, Manager shall operate the Hotel in accordance with the prior fiscal year's Annual Business Plan, with the expenses provided therein increased by ███████████████ until a new Annual Business Plan is agreed to.

Section 8.3    Deviations from Annual Business Plan.  Manager shall diligently pursue all feasible measures to enable the Hotel to adhere to the Annual Business Plan. Notwithstanding anything herein to the contrary, Manager is not warranting or guaranteeing in any respect that the actual operating results of the Hotel during the period covered by the Annual Business Plan will not materially vary from the projections described in the Annual Business Plan.  However, the Manager will provide explanations for all significant variances and programs put in place to correct or improve situations which deviate from the original plan.

## ARTICLE IX

### MANAGER'S FEES AND REIMBURSEMENTS

Section 9.1    Base Management Fee.    Commencing with the Management Commencement Date, during the remaining months of Fiscal Year 2001 and all of Fiscal Year 2002, in consideration of the services Manager is to render under this Agreement, Manager will be paid a fee ("Base Management Fee") in an amount equal ████████████████ of Gross Operating Revenues per Accounting Period.  Commencing with Fiscal Year 2003 (and for a

fraction of any Fiscal Year) for the remainder of the Initial Term and any Renewal Term, Manager will be paid an amount equal to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ of Gross Operating Revenues per Accounting Period. The Base Management Fee will be paid immediately following each Accounting Period. At the end of each Fiscal Year, an adjustment will be made, if necessary, and all sums due either the Manager or Owner shall be paid immediately.

Section 9.2  Incentive Fee.  In addition to the Base Management Fee, during each Fiscal Year (and for any partial Fiscal Year) in which Manager is to render services under this Agreement, Manager will be paid an incentive fee ("Incentive Fee") equal to ▓▓▓▓▓▓▓ of the Gross Operating Profit in excess of ▓▓▓▓▓▓▓ The Incentive Fee will be payable in installments by Manager immediately following each Accounting Period. At the end of each Fiscal Year, an adjustment will be made, if necessary, and all sums due either Manager or Owner shall be paid immediately.

Section 9.3  Total Fees Earned.  Notwithstanding the provisions of Sections 9.1 and 9.2, the combined Base Management Fee and Incentive Fee earned by Manager shall not exceed ▓▓▓▓▓▓▓▓ of annual Gross Operating Revenues.

Section 9.4  Accounting Fee.  In addition to the Base Management Fee and the Incentive Fee, the Manager shall be paid a fee for centralized accounting services (the "Accounting Fee") equal to ▓▓▓▓▓▓▓ Accounting Period during the Term of this Agreement and for one (1) Accounting Period after the termination of this Agreement. The Accounting Fee shall be increased each year in accordance with increases in the Consumer Price Index-Cities-All Urban Consumers (1982-84 = 100)", issued by the Bureau of Labor Statistics of the United States Department of Labor.

Manager agrees to provide Owner the option of having Manager provide centralized accounting services from the Holiday Inn Philadelphia Airport Hotel, which is owned by Owner or an affiliate of Owner, as long as Owner and Manager jointly agree upon the hardware and software systems to be utilized at the Holiday Inn Philadelphia Airport Hotel for these services. An appropriate charge for these services that would be provided at the Holiday Inn Philadelphia Airport would be assessed monthly to the Best Western Hotel.

Should the contract be terminated, there will be either one additional month's centralized accounting fee assessed to complete all final financial responsibilities for the Hotel or one monthly accounting assessment from the Holiday Inn Philadelphia Airport Hotel.

## ARTICLE X

## INSURANCE

Section 10.1  Insurance Coverage.  Owner, or Manager at the direction of Owner, shall provide and maintain, at Owner's cost and expense, insurance sufficient to furnish to Owner

and Manager reasonable and adequate protection in the management and operation of the hotel. Such insurance shall provide coverage for comprehensive general liability, automobile, garagekeepers liability, excess/umbrella liability, property insurance and boiler & machinery, all as more particularly set forth on the attached Exhibit B. All insurance shall be in the name of Owner and Manager as the insureds and shall contain riders and endorsements adequately protecting the interests of Manager as it may appear including, without limitation, provisions for at least twenty (20) days' notice to Manager of cancellation or of any material change therein. Prior to the Management Commencement Date and the commencement of each Fiscal Year thereafter, Owner shall furnish Manager with certificates evidencing the insurance coverages required pursuant to Exhibit B and with evidence of the payment of premiums therefor. Owner agrees that it will utilize Manager's insurance program to satisfy the requirements of this Section 10.1 unless Owner can obtain more comprehensive coverages at a better price and on more advantageous terms. It shall be the Manager's obligation as the employer, at the Owner's expense, to obtain Workers Compensation, Crime/Fidelity Bond, and Employment Practices coverages as set forth on Exhibit B. If Owner becomes the employer, this obligation shall become the responsibility of the Owner, at its own expense.

Section 10.2  Waiver of Subrogation - Owner Assumes Risk of Adequacy. Owner shall have all policies of insurance provide that the insurance company will have no right of subrogation against either party hereto, their agents or employees. Owner assumes all risks in connection with the adequacy of any insurance or self-insurance program, and subject to the provisions of Article XV hereof, waives any claim against Manager for any liability, costs or expenses arising out of any uninsured claim, in part or in full, of any nature whatsoever.

## ARTICLE XI

## TERM OF AGREEMENT AND TERMINATION

Section 11.1  Term. This Agreement shall be for a period commencing on the date hereof and unless sooner terminated as hereinafter provided, shall continue until the end of the Fiscal Year in which the fifth (5th) annual anniversary of the Management Commencement Date occurs (the "Initial Term"). Thereafter, this Agreement shall automatically renew for consecutive sixty (60) day renewal terms ("Renewal Terms") unless either party provides to the other notice of termination at least sixty (60) days prior to the end of the then current term. Any reference in this Agreement to "Term" shall be deemed to be a reference to the Initial Term and any Renewal Term.

Section 11.2  Early Termination. This Agreement can be terminated earlier as described below. Upon termination the rights and obligations of the parties will cease except as to fees and reimbursements due the Manager and other claims of liabilities of either party which accrued or arose before termination.

A.  Either Party can terminate this Agreement if:

(i)     the Hotel is damaged or destroyed by a casualty and the damaged portion of the Hotel cannot be reasonably repaired or restored within one (1) year of the occurrence of the event;

(ii)    the entire Hotel is taken in a condemnation proceeding or a portion of the Hotel is taken such that either party determines in its reasonable judgment that the Hotel cannot be operated at levels substantially like those experienced prior to the condemnation; or,

(iii)   the other party shall:  apply for or consent to the appointment of a receiver, trustee or liquidator of such party or of all or a substantial part of its assets; file a voluntary petition in bankruptcy, or admit in writing its inability to pay its debts as they come due; make a general assignment for the benefit of creditors; file a petition or an answer seeking reorganization or arrangement with creditors or to take advantage of any insolvency law or file an answer admitting the material allegations of a petition filed against it in any bankruptcy, reorganization or insolvency proceedings; or if an order, judgment or decree shall be entered by any court of competent jurisdiction, on the application of a creditor, adjudicating it a bankrupt or insolvent or approving a petition seeking reorganization of it or appointing a receiver, trustee or liquidator of it or of all or a substantial part of its assets, and such order, judgment or decree shall continue unstayed and in effect for any period of ninety (90) consecutive days; or

(iv)    Between January 1, 2003 and January 31, 2003, Owner and Manager each shall have the right to terminate this Agreement by giving sixty (60) days prior written notice of termination to the other party.  If Owner terminates this Agreement, the Owner shall pay Manager the waived Pre-Opening Fee of ███████████████ (as described in the Pre-Opening Agreement).

B.  The Owner can terminate this Agreement if:    Manager shall fail to keep, observe or perform any material covenant, agreement, term or provision of this Agreement and such default shall continue for a period of thirty (30) days after notice thereof by Owner to Manager, unless it is impossible for such breach of non-compliance to be remedied or corrected within such time due to no fault of Manager in which event, Manager shall remedy or correct such breach of non-compliance as soon as reasonably possible but in any event no later than ninety (90) days after such written notice unless the cure or remedy for such breach or non-compliance requires construction, in which event, Owner shall proceed with such construction as expeditiously as possible and shall have a reasonable period of time to complete such work.

C.   The Manager can terminate at any time if:

(i)   Owner fails to pay any amounts due to Manager;

(ii)  the Owner fails to furnish required Operating Funds in accordance with the provisions of the Pre-Opening Agreement and Article VI hereof;

(iii) Owner fails to make any other payment in accordance with the terms hereof when such payment is due and payable;

(iv)  there is a default under the terms and conditions of any security instruments executed in connection with Hotel;

(v)   Owner fails to provide and maintain the insurance policies called for in Article X;

(vi)  any license or permit necessary for the operation of the Hotel is not issued on the Management Commencement Date and thereafter maintained throughout the term of this Agreement; or

(vii) there is a breach of, or non-compliance by the Owner with any other term, condition or covenant contained in this Agreement followed by written notice from Manager to the Owner and failure of the Owner to remedy or correct same within thirty (30) days after receipt of such notice, unless it is impossible for such breach of non-compliance to be remedied or corrected within such time due to no fault of Owner, in which event, Owner shall remedy or correct such breach of non-compliance as soon as reasonably possible but in any event no later than ninety (90) days after such written notice unless the cure or remedy for such breach or non-compliance requires construction, in which event, Owner shall proceed with such construction as expeditiously as possible and shall have a reasonable period of time to complete such work; or

(viii) the Management Commencement Date does not occur on or before March 31, 2002.

Section 11.3  Remedies on Default.  Notwithstanding the other provisions of this Article XI, the party asserting a default hereunder may, without prejudicing its rights to terminate this Agreement pursuant to this Article XI, seek arbitration in accordance with the provisions of Section 16.6 hereof, or any other legal or equitable remedy.



G:\HOTELS\CROSSRDS\NewYorkBestWestern\MgmtAgmt.1p1.doc

-11-

Section 11.4. Termination Procedure.

A.  If a termination occurs pursuant to Section 11.2(A) or Section 11.2(B), the party electing to terminate shall give the other party written notice of such election. On the date which is ten (10) days after the date of such notice, Manager shall cease all activities at the Hotel and shall have no further obligations under this Agreement.

B.  If a termination occurs pursuant to Section 11.2(C), Manager shall give to Owner notice of such election. Any time thereafter, Manager may, on ten (10) days' written notice, cease all activities at the Hotel and thereafter have no further obligations under this Agreement.

C.  After the notice is given, and prior to the date Manager ceases activities at the Hotel, Manager shall be paid any and all fees or expenses due it pursuant to this Agreement, and Manager shall cooperate with Owner in the orderly transfer of management to Owner or Owner's designated agent.

D.  Upon notice, a deposit will be made by Owner of ▓▓▓▓▓▓ to cover subsequent expenses which must be made by the Manager to terminate activities of the Hotel. A budget will be prepared for Owner's approval and an accounting will be made of these monies and surpluses will be sent to Owner. Any deficits will be funded by Owner.

## ARTICLE XII

## OWNER'S REPRESENTATIONS AND COVENANTS

Section 12.1 Owner's Representations.  Owner covenants, represents and warrants as follows:

A.  The Owner is the owner of the Hotel and has full power and authority to enter into this Agreement;

B.  The Hotel will be zoned for use as a hotel, motor hotel or resort, and all necessary governmental and other permits and approvals for such use and operations of the Hotel will be obtained and remain in full force and effect; and

C.  Throughout the term of this Agreement, the Owner will pay, keep, observe and perform all payments, terms, covenants, conditions and obligations under any lease or other concession, any deed of trust, mortgage or other security agreement, and any real estate taxes or assessments covering or affecting the Hotel.

## ARTICLE XIII

### ASSIGNMENT

Section 13.1  Assignment.  Neither party shall assign or transfer or permit the assignment or transfer of this Agreement without the prior written consent of the other; provided, however, that Manager shall have the right, without such consent, to irrevocably and totally assign its interest in this Agreement to any of its Affiliates or to an entity under the control of then current senior executives of Interstate Hotels Corporation, an Affiliate of Manager.  Nothing contained herein shall prevent the transfer of this Agreement in connection with a merger or consolidation of substantially all of the assets of either party or their respective Affiliates.  In the event of consent by either party to an assignment of this Agreement by the other, no further assignment shall be made without the express consent in writing of such party, unless such assignment may otherwise be made without such consent pursuant to the terms of this Agreement.  Owner may sell the Hotel and assign this Agreement to the new owner without paying any termination fee if Manager approves the new owner as being financially sound and having a good moral standing, and such new owner assumes all of the obligations hereunder in a written instrument acceptable to Manager.  An assignment by either Owner or Manager of its interest in this Agreement shall not relieve Owner or Manager, as the case may be, from their respective obligations hereunder unless the assignee accepts full responsibility for performance of the same.

## ARTICLE XIV

### TAXES

Section 14.1  Real Estate and Property Taxes.  All real estate and ad valorem property taxes, assessments and similar charges on or relating to the Hotel during the term of this Agreement shall be paid by Owner before any fine, penalty or interest is added thereto or lien placed upon the Hotel or this Agreement, unless payment thereof is, in good faith, being contested and enforcement thereof is stayed.  Owner shall, within the earlier of thirty (30) days of payment or ten (10) days following written demand by Manager, furnish Manager with copies of official tax bills, assessments and evidence of payment or contest thereof.  Manager's responsibilities specifically exclude the preparation, filing or contesting of these taxes.

## ARTICLE XV

### INDEMNIFICATION AND LIMITATION OF LIABILITY

Section 15.1  Indemnification and Limitation of Liability.  Owner shall hold harmless, indemnify and defend Manager and its Affiliates and their respective agents, employees, officers, directors and shareholders from and against all expenses incurred by Manager or its Affiliates which, in Manager's sole judgment, were or are necessary or desirable for the

operation of the Hotel, and all claims (administrative or judicial), damages, losses and expenses (including, but not limited to, attorneys' fees for pre-trial, trial and appellate proceedings, accounting fees, appraisal fees and consulting and expert witness fees) arising out of or resulting from Manager's activities performed pursuant to this Agreement, any franchise agreement, any past or future building code or life/safety code violations, and injury to person(s) and damage to property or business by reason of any cause whatsoever in and about the Hotel or elsewhere, and any requirement or award relating to course of employment, working conditions, wages and/or compensation of employees or former employees at the Hotel, unless any such injury or damage is caused by gross negligence, willful misconduct, or fraud on the part of Manager, its agents, employees, or representatives. Any indemnification shall apply regardless of whether or not said claim, damage, loss or expense is covered by insurance as herein provided.

Section 15.2 Manager's Indemnification. Manager shall hold harmless, indemnify and defend Owner and its Affiliates, and their respective agents, employees, officers, directors and shareholders, from and against all claims, damages, losses and expenses (including, but not limited to, attorneys' fees for pre-trial, trial and appellate proceedings) arising out of or resulting from Manager's gross negligence, willful misconduct or fraud.

Section 15.3 Indemnification Procedure. Upon the occurrence of an event giving rise to indemnification, the party seeking indemnification shall notify the other party hereto and provide the other party hereto with copies of any documents reflecting the claim, damage, loss or expense. The party seeking indemnification is entitled to engage such attorneys and other persons to defend against the claim, damage, loss or expense, as it may choose. The party providing indemnification shall pay the reasonable charges and expenses of such attorneys and other persons on a current basis within twenty (20) days of submission of invoices or bills. In the event Owner neglects or refuses to pay such charges, Manager may pay such charges out of the Agency Account and deduct such charges from any amounts due Owner or add such charges to any amounts due Manager from Owner. If any claim, lawsuit or action (administrative or judicial) is maintained against Manager, Owner or the Hotel due to allegations or actions arising prior to the Term, Owner shall bear full and complete responsibility for the defense of the Hotel, the Owner, the Manager, specifically including all legal fees and necessary and attendant expenses for the vigorous defense and representation of the interests of the Manager (for pre-trial, trial and appellate proceedings), the Hotel and the Owner. Owner shall support and pay for all legal fees and representations necessary to remove Manager from any claim, action (administrative or judicial), or lawsuit covered by this provision.

Section 15.4 No Successor Liability. Notwithstanding anything herein to the contrary, neither Manager nor its affiliates shall be liable as a successor employer or entity for any actions Owner or Owner's predecessors may have taken in the employer-employee relationship with Owner's current or former employees or employees or Owner's agents before the commencement of the Term. Specifically, Manager shall not be liable or responsible in any manner for, and Owner shall indemnify and hold Manager harmless from, pending claims, lawsuits, actions (administrative or judicial), or unasserted claims arising out

of Owner's or Owner's predecessors' ownership, operation, or employment of employees of the Hotel.

## ARTICLE XVI

## MISCELLANEOUS

Section 16.1 <u>Severability</u>. In the event that any portion of this Agreement shall be declared invalid by order, decree or judgment of a court, this Agreement shall be construed as if such portion had not been inserted herein except when such construction would operate as an undue hardship to Manager or Owner or constitute a substantial deviation from the general intent and purpose of said parties as reflected in this Agreement.

The failure of either party to insist upon a strict performance of any of the terms or provisions of this Agreement or to exercise any option, right or remedy herein contained, shall not be construed as a waiver or as a relinquishment for the future of such term, provision, option, right or remedy, but the same shall continue and remain in full force and effect. No waiver by either party of any term or provision hereof shall be deemed to have been made unless expressed in writing and signed by such party.

Section 16.2 <u>Agency</u>. The relationship of Owner and Manager shall be that of principal and agent. Nothing contained in this Agreement shall be construed to create a partnership or joint venture between them or their successors in interest. Neither party shall borrow money in the name of, or pledge the credit of, the other. Manager's agency established by this Agreement is coupled with an interest and may not be terminated by Owner except in accordance with the terms hereof.

Section 16.3 <u>Consents</u>. Except as herein otherwise provided, whenever in this Agreement the consent or approval of Owner or Manager is required, such consent or approval shall not be unreasonably withheld or delayed. Such consent or approval shall be in writing only and shall be duly executed by an authorized officer or agent of the party granting such consent or approval.

Section 16.4 <u>Applicable Law</u>. This Agreement shall be construed under, and governed in accordance with, the laws of the State of New York.

Section 16.5 <u>Successors Bound</u>. This Agreement shall be binding upon and inure to the benefit of Owner, its successors and assigns, and shall be binding and inure to the benefit of Manager and its permitted assigns.

Section 16.6 <u>Arbitration</u>. In the event a dispute should arise concerning the interpretation or application of any of the provisions of this Agreement, the parties agree the dispute shall be submitted to arbitration of the American Arbitration Association, except as modified by this <u>Section 16.6</u>. The Arbitration Tribunal shall be formed of three (3) Arbitrators each of which shall have at least five (5) years' experience in hotel operation, management

or ownership, one (1) to be appointed by each party and the third (3rd) to be appointed by the American Arbitration Association. The arbitration shall take place in New York, New York, and shall be conducted in the English language. The arbitration award shall be final and binding upon the parties hereto and subject to no appeal, and shall deal with the question of costs of arbitration and all matters related thereto. Arbitration expenses shall not be an expense in determining Gross Operating Profit. Judgment upon the award rendered may be entered into any court having jurisdiction, or applications may be made to such court for an order of enforcement.

Section 16.7 <u>Incorporation of Recitals</u>. The recitals set forth in the preamble of this Agreement are hereby incorporated into this Agreement as if fully set forth herein.

Section 16.8   <u>Force Majeure</u>. If act of God, acts of war, acts of terrorism, civil disturbance, labor strikes, governmental action, including the revocation of any license or permit necessary for the operation contemplated in this Agreement where such revocation is not due to Manager's fault, or any other causes beyond the control of Manager shall, in Manager's reasonable opinion, have a significant adverse effect upon the operations of the Hotel, then Manager shall be entitled to terminate this Agreement upon sixty (60) days' written notice from the date of such event.

Section 16.9 <u>Notices</u>. Notices, statements and other communications to be given under the terms of this Agreement shall be in writing and delivered by hand against receipt or sent by certified or registered mail or by Federal Express or other similar overnight mail service, return receipt requested:

<u>To Owner:</u>                               with copy to:



Phone:
Fax:

<u>To Manager:</u>                            with copy to:
Crossroads Hospitality
Management Company
c/o    Interstate Hotels Corporation        Interstate Hotels Corporation
       Foster Plaza Ten                      Foster Plaza Ten
       680 Andersen Drive                    680 Andersen Drive
       Pittsburgh, PA  15220                 Pittsburgh, PA  15220
Attn:  President & Chief                     Attn: General Counsel
       Operating Officer
Phone 412-937-0600                           Phone 412-937-0600
Fax   412-937-3055                           Fax   412-937-3263

or at such other address as from time to time designated by the party receiving the notice.

Section 16.10  Entire Agreement.  This Agreement, together with other writings signed by the parties expressly stated to be supplementing hereto and together with any instruments to be executed and delivered pursuant to this Agreement, constitutes the entire agreement between the parties and supersedes all prior understandings and writings, and may be changed only by a writing signed by the parties hereto.

Section 16.11  Time.  Time is of the essence with respect to this Agreement.

Section 16.12  Attorneys' Fees.  In the event of any litigation arising out of this Agreement, the prevailing party shall be entitled to reasonable costs and expenses, including without limitation, attorneys' fees.

Section 16.13  Use of Hotel Guest Rooms by Corporate Staff or Employees.  At any time Manager or its affiliates are doing business for the Hotel, and are using the Hotel's guest rooms for this purpose, then those rooms will be complimentary.  At any time Manager, its affiliates or employees wish to use the Hotel's guest rooms for non-related business of the Hotel, then those individuals will be charged the posted Corporate Rate as defined within the Annual Business Plan.

Section 16.14  Task Force.  Commencing ninety (90) days after the Management Commencement Date, Manager agrees that it will not, without Owner's approval, utilize any of the Hotel's staff for task-force services at other Hotels operated by Manager or its affiliates and will also not place any task-force personnel at the Hotel if the expense associated with such task-force individual is outside of the agreed-upon Annual Business Plan.

Section 16.15  Lounge Operation.  Manager acknowledges that Owner will lease the Hotel's lounge operation to a third-party lessee.  Because the lounge operation is an integral part of the Hotel's operations, Manager reserves the right to approve the lounge operator and its standards of operations.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers.

ATTEST:

OWNER:
UNIGROUP HOTEL LLC

By: _____
Name: _Kw CHuly LAm____
Title: _MENEER_____

ATTEST:

_Jacki Cheseleur_

MANAGER:
CROSSROADS HOSPITALITY
MANAGEMENT COMPANY

By: _____
Name: _TIMOTHY A. BREED_
Title: _VP FINANCE_

Exhibit A

The Land
(to be provided by Owner)

# EXHIBIT 3

**ihr**

Interstate
Hotels & Resorts

February 3, 2005

Unigroup Hotel, LLC
c/o Leon Luk
Luk and Luk, LLP
254 Canal Street #2001
New York, NY 10013

522 W.38th St. NY LLC
c/o Robert A. Rubenfeld, Esq.
Todtman, Nachamie, Spizz & Johns, P.C.
425 Park Ave.
New York, New York 10022
Phone: (212) 754-9400 x-403
Fax: (212) 754-6262

Re:    Management Agreement between Unigroup Hotel, LLC ("Assignor") and
Crossroads Hospitality Management Company ("Manager"), dated June 6, 2001 (the
"Management Agreement") for the management of the Best Western Hotel located at 522
West 38th Street, NY, NY.

Dear Mssrs. Rubenfeld and Luk:

We hereby consent to the assignment of the Management Agreement from
Assignor to Assignee pursuant to the Assumption and Modification of Management
Agreement signed as of January 31, 2005 between Manager and Assignee.

Sincerely,

Alicia Kabiri
VP, Assistant General Counsel

## ASSUMPTION AND MODIFICATION OF MANAGEMENT AGREEMENT

THIS ASSUMPTION AND MODIFICATION OF MANAGEMENT AGREEMENT, dated as of January 31, 2005 (this "Amendment") is made by and between CROSSROADS HOSPITALITY MANAGEMENT COMPANY, LLC, a Delaware Limited Liability company and subsidiary of Interstate Hotels & Resorts, Inc., ("Manager"), and 522 W.38th St. NY LLC, a New York limited liability company ("Assignee").

### WITNESSETH:

WHEREAS, Unigroup Hotel, LLC ("Assignor") and Manager entered into a Hotel Management Agreement dated June 6, 2001 (the "Management Agreement") for the management of the Best Western Hotel located at 522 West 38th Street, NY, NY ("Hotel");

WHEREAS, Assignor and Assignee have executed a Purchase and Sale Agreement pursuant to which Assignee is taking title to the Hotel on or about January 31, 2005 ("Closing Date");

WHEREAS, Assignee desires to assume Assignor's obligations, responsibilities and liabilities under the Management Agreement, as amended herein; and

WHEREAS, Manager and Assignee have agreed to some modifications of the Management Agreement,

NOW, THEREFORE, the parties hereto agree as follows:

1.  Assignee does hereby accept the foregoing assignment and does hereby assume, agree to perform and be bound by all of the covenants, conditions, obligations and liabilities, hereafter accruing from Closing Date, of Assignor under the Management Agreement.

2.  Manager hereby agrees to the above assignment of the Management Agreement and does hereby release Assignor from any and all obligations under the Management Agreement incurred or accruing after the Closing Date and represents that annexed hereto as Exhibit "1" is a true, complete and accurate copy of the Management Agreement.

3.  The Management Commencement Date will thereafter be considered the date upon which Assignee takes title to the Hotel. Manager shall commence performance of Management Services for Assignee/Owner on the Closing Date.

4.  The Management Agreement shall be amended as of the Closing Date as follows:

    A.   Section 9.1 is revised to change the Base Management Fee to the following percentages of Gross Operating Revenues:

    > First Four Months after Commencement Date:
    > Months Five through Twelve after Commencement Date:
    > Year Two:
    > Year Three:



    B.   Section 11.1 is hereby deleted and replaced with the following:

    > Term. This Agreement shall be for a period commencing on the Closing Date and continuing until the third anniversary of the Closing Date (the "Initial Term").

    C.   Termination Upon Sale. The following is added to Section 11.2: Upon no less than 30 days notice, Owner may terminate, without penalty, this Agreement upon any sale or transfer of the hotel to an unaffiliated third party.

1-28-05

D.    <u>Assignment</u>. Section 13.1 is hereby amended to terminate Owner's right to assign this Management Agreement upon sale of the Hotel.

E.    Section 11.2(D) is added to the Agreement as follows:

<u>Manager's Right to Terminate for Union issues.</u>  Manager acknowledges that Owner desires the Hotel to operate as a non-Union hotel. Owner acknowledges and agrees that (a) Manager will not participate or assist Owner in resisting any union campaign or organization efforts by any union, and (b) Manager and its affiliates manage other unionized hotels in the New York City area (including any airport markets servicing the New York City or surrounding areas) and organizational efforts by union(s) and organizational efforts by union(s) with respect to the Hotel employees may affect, disrupt, hinder or interfere with the normal operations at such other hotels managed by Manager and its affiliates. If at any time during the Term, Manager reasonably determines that the operations or labor relations at the other hotels managed by Manager and its affiliates, are actually and materially interfered with, disrupted, hindered or affected as a result of labor relations or labor unrest at the Hotel between the Hotel, its employees or any union (or lack of any collective bargaining agreement in effect for the Hotel) ("Labor Issues"), Manager shall have the right, without penalty, to terminate the Management Agreement by providing Owner at least sixty (60) days prior written notice of termination setting forth in detail the exact basis for such notice, unless Owner cures such Labor Issues to the reasonable satisfaction of Manager (which satisfaction will not be deemed given unless acknowledged in writing by Manager) within thirty (30) days of Owner's receipt of such notice, in which case the notice of termination shall be deemed rescinded. In the event that Manager exercises the termination right described, then Manager shall owe Owner no termination fee.

F.    Section 6.2 is amended as follows:

Upon Closing Date, Owner shall fund the Agency Accounts with Operating funds of at least ███████ thereafter, Owner shall maintain at least ███████ in the Agency Account. Manager will make a distribution to Owner on a weekly basis of any cash in excess of the Hotel's operating needs plus the ███████ operating funds required herein.

G.    The following is added to Article X (Insurance): Owner shall ensure that Manager is listed as additional insured on all policies. Manager shall obtain all insurance only as approved by Owner in writing in advance.

H.    Section 3.2 is hereby amended to require Manager to allow Owner the opportunity to interview and approve the hiring of the Hotel's General Manager.

I.    The following provision is hereby added to Article XII:

12.2.    Each party represents, warrants and covenants that neither it, nor any of its affiliates (or any of their respective principals, partners or funding sources), is nor will become (i) a person designated by the U.S. Department of Treasury's Office of Foreign Asset Control as a "specially designated national or blocked person" or similar status, (ii) a person described in Section 1 of U.S. Executive Order 13224 issued on September 23, 2001; (iii) a person otherwise identified by a government or legal authority as a person with whom Owner or Manager is prohibited from transacting business; (iv) directly or indirectly owned or controlled by the government of any country that is subject to an embargo by the United States government; or (v) a person acting on behalf of a government of any country that is subject to an embargo by the United States government. Each party agrees that it will notify the other party in writing immediately upon the occurrence of any event which would render the foregoing representations and warranties contained in this Section 12.2 incorrect.

J.    The following provision is hereby added to the Management Agreement as Article 17:

Jan 28, 2005

ARTICLE XVII:  CENTRALIZED SERVICES; MULTI-PROPERTY PROGRAMS;
WIDE AREA NETWORK

17.1.    Manager may, subject to the Budgets and as set forth in Exhibit F hereto[1] (or otherwise approved in writing by Ownership), provide or cause its affiliated companies to provide for the Hotel and its guests the full benefit of any reservations system hereafter established by Manager or its affiliates and provide, or cause its affiliated companies to provide, such aspects of any accounting or purchasing services, other group benefits and services, revenue management services, on-site sales training, associate satisfaction surveys, Manager's national training program and other training as are made available generally to similar properties managed by Manager (individually and collectively, "Centralized Services").  Subject to the provisions of the applicable Budget, Manager or such of Manager's affiliated companies as provide Centralized Services shall be entitled to be reimbursed for the Hotel's share of the total costs that are reasonably incurred in providing such Centralized Services on a system-wide basis to hotels and motels managed by Manager or its affiliates which costs may include, without limitation, reasonable and customary salaries (including payroll taxes and employee benefits) of employees and officers of Manager and its affiliates, costs of all equipment employed in the provision of such services and a reasonable charge for overhead.  The Hotel's share of such costs shall be determined in an equitable manner by Manager (which shall be reasonably satisfactory to Owner) and substituted to Owner after each Fiscal Year (as hereinafter defined), shall be an Operating Expense of the Hotel and shall be borne by Owner and paid or reimbursed to Manager out of the Agency Account or if the amounts therein are insufficient by Owner upon 10 days' written demand therefore by Manager.  Manager shall maintain and make available to Owner invoices or other evidence supporting all of the charges for Centralized Services.  Notwithstanding the foregoing, Manager's fee for providing centralized accounting services shall be the Accounting Fee (as defined in Section 9.2 hereof).  Owner acknowledges and agrees that (i) Manager has disclosed to Owner the types of Centralized Services Manager currently makes available to properties which it operates, (ii) the Hotel is likely to receive substantial benefit from its participation in such Centralized Services, (iii) Manager is not obligated to provide such Centralized Services under Article III of this Agreement, (iv) Manager is entitled to payment for such Centralized Services in the manner set forth above in addition to its Basic Fee and Incentive Fee, and (v) the receipt by Manager of any such payment does not breach any fiduciary or other duty which Manager may have to Owner.

17.2.    Owner may elect to participate in the Multi-Property Programs (as defined herein) on an annual basis.  Once elected, Owner may not terminate its participation until the following year.  Owner shall participate in the entire Multi-Property Programs and shall not be entitled to elect in/out of the individual contracts.  Owner acknowledges and agrees that Manager may in Manager's reasonable discretion enter into certain purchasing, maintenance, service or other contracts with respect to the Hotel (collectively, "Multi-Property Programs"), pursuant to which Manager or affiliates of Manager receive rebates, discounts, cash or other incentives, administration fees, concessions, profit participations, stock or stock options, investment rights or similar payments or economic consideration (collectively, "Manager Rebates") from or in, as applicable, the vendors or suppliers of goods or services provided under such Multi-Property Programs.  Owner acknowledges and agrees that (i) Manager has disclosed to Owner the types of Multi-Property Programs Manager currently makes available to properties which it operates and (ii) subject to the last sentence of this Section, (1) the Hotel is likely to receive substantial benefit from its participation in such Multi-Property Programs which the Hotel could not obtain on its own and for which Manager is not adequately compensated by its Basic Fee and Incentive Fee, (2) any and all Manager Rebates shall be disclosed in writing to Owner and are the sole property of Manager and not Owner, and (3) the receipt by Manager of any Manager Rebates does not breach any fiduciary or other duty which Manager may have to Owner.  Notwithstanding the foregoing, Manager hereby covenants to Owner that the terms of any Multi-Property Programs in which the

---

[1] Manager represents that the items in Exhibit F will not increase the 2005 Budget and expense items approved by Assignor.

Hotel participates, when taken as a whole, shall not be materially less favorable to the Hotel than the prevailing terms of contracts to provide similar goods or services on a single-property basis obtainable on a commercially reasonable basis from unrelated parties in the area of the Hotel. To the extent the Manager Rebates from the Multi-Property Programs exceed all costs and expenses in managing and overseeing the Multi-Property Programs during any Fiscal Year, such excess shall be distributed to the Hotel (allocated ratably among all hotels participated in the Multi-Property Program by multiplying the amount of such excess by a fraction, the numerator of which is the total amount of purchases through the Multi-Property Programs by the Hotel, and the denominator of which is the total amount of purchases through the Multi-Property Programs by all of the hotels managed by Manager that participate in the Multi-Property Programs).

17.3.    With Owner's prior written consent (which Owner acknowledges has been given to manager), Manager shall have the right to install and use Manager's Wide Area Network ("WAN") and associated software at the Hotel throughout the Term.  Owner may terminate the WAN upon thirty days advance written notice.  WAN installation and connectivity charges and associated software license fees shall be determined in an equitable manner by Manager, subject to the reasonable approval of Owner, shall be an Operating Expense and shall be paid or reimbursed to Manager out of the Agency Account or if the funds therein are insufficient by Owner.  The attached Exhibit A sets forth Manager's quote for the WAN hardware, systems design and configuration, project management, audit and design costs and charges.  In addition to the WAN, a monthly Sprint data line pass-through connectivity charge of One hundred eighty five Dollars ($185.00) shall be an Operating Expense and shall be paid or reimbursed to Manager out of the Agency Account or if the funds therein are insufficient by Owner (the "Connectivity Charge").  Owner acknowledges that the property currently has the Sprint data line installed.

J.    Section 6.3 is hereby deleted from the Management Agreement.

5.    Notices under the Management Agreement shall be sent to the following:

To Manager:        Crossroad Hospitality Management Company, LLC
                   4501 N. Fairfax Drive
                   Arlington, Virginia 22201
                   Attn:. General Counsel

To Owner:          522 W. 38ᵗʰ St. NY, LLC
                   147-25 Northern Boulevard
                   Suite 3B
                   Flushing, New York 11354
                   Attn:

6.    All Capitalized terms herein will have the same meaning ascribed to them in the Management Agreement.

7.    Upon the effective date of this Agreement, Manager shall use reasonable efforts to assist Assignee in the transition of ownership of the Hotel.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound hereby, have caused this Assignment to be executed by their respective officers thereunto duly authorized as of the date first above written.

MANAGER:

                   CROSSROADS HOSPITALITY MANAGEMENT COMPANY, LLC

                   By: _Alicia Fahir_____
                   Name: ~~Christopher Bennett~~ Alicia Fahiri
                   Title: ~~SVP, General Counsel~~
                          └Assistant.

Jan 28, 2005

ASSIGNEE:

522 W.38th St. NY LLC

By: _____

Name: _____Shaw Z A A Cheng____

Title: _____Owner_____

1-28-05

# EXHIBIT 4



## AGREEMENT

**MEMORANDUM OF AGREEMENT** entered into this 15th day of January 2004 between the **NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO** ("Union") and **INTERSTATE HOTELS AND RESORTS** ...

**NOW, THEREFORE,** the parties agree as follows:

1. ...

2. ...

3. ...



Dated: January 16, 2004
NEW YORK HOTEL AND MOTEL
TRADES COUNCIL, AFL-CIO

INTERSTATE HOTELS AND RESORTS

**ADDENDUM IV**

Company Name
Address

Dear _____

    This letter agreement will confirm the discussions we have had regarding the procedures to be followed by the New York Hotel & Motel Trades Council ("Union") to organize certain employees at hotels and convention centers at which Currently resolves or ownership, management or control changes and the Union does not have representational rights ("Hotels"), and various other matters, including the resolution of disputes related to such organizational drives and/or the terms of this letter agreement ("Agreement") and any subsequent collective bargaining agreement.

**1.   Use of Impartial Chairman**

    The Impartial Chairman of the Hotel Industry of New York City ("Impartial Chairman") will conduct a "card count" to determine whether the Union has obtained valid cards from a majority or of full-time and regular part-time employees of the Hotel employed in job classifications listed in Schedule A to the Industry Wide Agreement between the Union and the Hotel Association of New York City Inc. ("IWA") describing the classes of their representative for purposes of collective bargaining (the "Cards") and to verify demand of any valid count all in accordance with the procedures set forth in Section III below. Full-time and regular part-time employees of the Hotel employed in job classifications listed in Schedule A shall be referred to throughout this Agreement as "Employees".

    The Impartial Chairman also will resolve any and all disputes of any kind whatsoever arising out of this Agreement, or concerning the meaning or interpretation of any and all matters hereunder, including but not limited to the terms and provisions of any collective bargaining agreement entered or to be entered into, by and between the Hotel and the Union. Any costs incurred by the parties in initiating, prosecuting, before the Impartial Chairman, or defending against the same, shall be the responsibility of its respective party. Costs charged by the Impartial Chairman shall be shared and paid equally by the parties. Any arbitration award or decision issued by the Impartial Chairman, written or otherwise, shall be final and binding upon the parties, and subject to the provisions of Article 75 of the New York Civil Practice Law and Rules ("CPLR") including, but not limited to, the procedures to vacate or modify an award pursuant to Section 7511 of the CPLR, and shall be enforceable in a court of competent jurisdiction.

**2.   Union Access to the Hotel**

    The Union will begin its organization of the Hotel's employees at any time upon notice to the Hotel's General Manager. The Union will be permitted to have its organizers or representatives enter the Hotel to meet with Employees during the Employees' non-working times (for example, before work, after work, and during shift changes and breaks) and/or during such other periods as the parties may mutually agree upon in writing. The Union may

Document #: 359389

engage in organizing efforts in non-public areas of the Hotel such as the Employee mealrooms and locker rooms or such other non-public areas as the parties may mutually agree upon.

Within three (3) days following receipt of the above described written notice of intent to organize Employees, the Employer will furnish the Union with a complete list of such Employees, including both full and part-time Employees, showing their job classifications and departments, work schedules, wages and benefits, and the home addresses and telephone numbers of all Employees. Thereafter, the Employer will promptly provide updated lists for the duration of the organizing drive.

There shall be no lockout of the Employees by the Hotel and the Union shall not cause any disruption of work by the Employees during the organizing activity, nor shall there be any picketing, strikes, slow downs or other work stoppages at the Hotel by or caused by the Union for any purpose, including organizing, contract negotiations, dispute publication or enforcement of the terms of this Agreement. The "no lockout, no strike" provisions hereof shall not apply in the event either party fails to abide by an award or decision of the Impartial Chairman within three (3) business days after issuance. Both the Hotel and the Union agree to respect the National Labor Relations Act ("NLRA") Section 7 rights of employees during the Union's organizing drive, and neither party shall, or be required to, act in contravention of those rights. The Hotel specifically agrees that its supervisory employees, its agents and/or its representatives will not act or make any statements that will directly or indirectly imply the Hotel's opinion as to whether or not the employees should support the Union or as to the reputation of the Union or any of its officers and affiliate local unions or as to the reputation of any of the officers of the Union's affiliate local unions and/or their parent unions.

3.    Determination of Majority Status

At any time after the commencement date of the Union's organizing effort, the Union may request that a card count be conducted by the Impartial Chairman. The Union shall initiate this process by advising the Hotel's General Manager in writing ("Notification Letter") that it represents a majority of the full-time and regular part-time employees employed by the Hotel in the job classifications set forth in the IWA Schedule A. The date of the Union's Notification Letter shall be the date ("Notification Date") used for purposes of determining the composition of the list or the names of the Employees to be furnished by the Hotel to the Impartial Chairman, so that all full-time and regular part-time Employees of the Hotel employed on or before the Notification Date will be the only Employees whose names will appear on the list.

Within forty-eight (48) hours of the delivery of the Notification Letter by the Union to the Hotel indicating its majority status, the Union shall notify the Impartial Chairman in writing that his services are requested for purposes of conducting a card count. The Union shall immediately confirm to the Hotel's General Manager that the Impartial Chairman has retained jurisdiction of the card count proceeding. As soon as practicable thereafter, but in any event no later than seven (7) days after the date of the Union's written card count request made to the Impartial Chairman, the Union shall furnish to the Impartial Chairman the Cards it has obtained from the Employees, and the Hotel shall furnish the Impartial Chairman the list containing the names, job classifications and social security numbers of Employees employed as of the date of the Union's Notification Letter (with a copy to the Union) together with copies of official employment documents containing the signatures of each of the Employees (e.g. Forms I-9, Form W-4 or similar documents), in care of the Office of the Impartial Chairman, 321 West 44th Street, New York, New York 10036.

Document #: 359389

Within forty-eight (48) hours after his receipt of the documents described above, the Imperial Chairman shall conduct a card count by checking the Cards against the list of Employees and by comparing the Employees' names and signatures presently on the Cards to the names and signature appearing on the employment agreement supplied to the Imperial Chairman by the Hotel. At the conclusion of the card count, the Imperial Chairman shall inform the parties of the results of the count and shall certify in writing that either the Union has or has not been selected by a majority of eligible Employees in the Unit as their collective bargaining representative. Both the Hotel and the Union agree to abide by the determinations made by the Imperial Chairman regarding any challenges either to the validity of the Cards, the eligibility of Employees, the appropriateness of the Unit and/or to the majority status of the Union.

If, after the conduct of the card count, the Union fails to be certified by the Imperial Chairman as the majority representative of the eligible Employees, this Agreement shall be deemed to continue in full force and effect, unless it is otherwise terminated in writing by mutual agreement of the parties. Notwithstanding any of the foregoing seemingly to the contrary, the Hotel and Union also agree that the Imperial Chairman shall be empowered to issue such remedial action as is consistent with applicable NLRB standards and as necessary during and after the pendency of the Union's organization drive to ensure the maintenance of the neutral environment and/or to penalize the Hotel or the Union for violating their obligations hereunder, including an order to bargain in accordance with applicable NLRB standards and/or monetary or injunctive damages to either party.

If the Union is certified as the majority representative of the Employees, the Hotel must recognize the Union and the Hotel and the Union will commence negotiations within seven (7) calendar days of the date of the certification, at a mutually agreeable time and place, for a collective bargaining agreement governing wages, hours and other terms and conditions of employment (the "Agreement").

I believe that the above correctly describes our discussions on these matters. Please signify your concurrence by signing where indicated below and returning one copy to me, the other being for your files.

Very truly yours,

Peter Ward
President

Executed, Agreed and Accepted
on behalf of Hotel/Company

By: _____
    Name:
    Title:
    Date:

Document #: 359389

# EXHIBIT 5

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

#2007-57
Best Western Convention Center
August 8, 2007
Page 1 of 2

**EMPLOYER:  BEST WESTERN CONVENTION CENTER**

HTC Case #U07-282/Emergency hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO, re:  Management's failure to comply with Article 60 and Addendum 4 of the IWA.

Hearings held at the Office of the Impartial Chairperson on August 8, 2007.

**APPEARANCES:**

| | |
|---|---|
| For the Employer: | No Appearance |
| Counsel for the Employer:<br>By: | Seyfarth Shaw<br>Paul Galigan Esq. |
| For the New York Hotel & Motel Trades Council, AFL-CIO:<br>Counsel:<br>By: | Pitta & Dreier, LLP<br>Joseph Farelli, Esq. |
| For the Union: | Brian Lysell<br>Mario Rodriquez<br>Elizabeth Guerra |

\*    \*    \*

After discussion amongst the parties, I am issuing the following Consent Award.

1. I direct that the Hotel shall cease and desist from violating Article 60 of the IWA and Addendum IV;

2. I direct that the Hotel shall take all steps necessary to ensure that Article 60 and Addendum IV are complied with in total;

3. I direct that the Hotel General Manager issue both a written and verbal statement to all employees, which is spelled out in Appendix A, attached hereto. The Statements shall be issued in English and Chinese. The Union's organizers shall be present during the reading and shall be permitted to have a Chinese interpreter also present. All Hotel managers and supervisors shall be present at

#2007-57
Best Western Convention Center
August 8, 2007
Page 2 of 2

OFFICE OF THE IMPARTIAL CHAIRPERSON
321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036
TEL: (212) 541-7212  FAX: (212) 541-9356

the time when the verbal statement is made. The verbal statement shall be made to employees during working time. The written statement shall be posted prominently in the Hotel and attached to each employee's paycheck.

4.  The Hotel shall cover all surveillance cameras in the areas where Union organizers meet with employees.

5.  The Hotel General Manager shall keep closed his office door while Union organizers are on the Hotel premises.

6.  Hotel shall pay the two employees for the time they spend appearing at today's hearing for which they were subpoenaed.

Dated:       August 8, 2007
             New York, NY

IRA DROGIN, under the penalties of perjury duly affirms that he is the arbitrator described herein, and that he executed the foregoing instrument.

_____
IMPARTIAL CHAIRPERSON

#2007-57
APPENDIX A
Best Western Convention Center Hotel
August 8, 2007

I have an important statement to make in order to clarify the events of the last several days and would appreciate each associate's attention to what I have to say.

During the past few weeks since Union organizers have been coming into the Hotel to talk to associates, certain managers, including myself, may have expressed certain opinions and may have behaved in a way, which suggested that management was opposed to the Union. As a result, associates who trusted these managers may have gotten the impression that there was a possibility that, if the Union were voted in, your conditions at work might get worse, that you might lose benefits or privileges you currently enjoy, that the Union might charge you $8,000.00 for dues, or that you might even lose your job.

If any manager gave anyone that impression, it was wrong and inaccurate information. Furthermore, managers or supervisors, including myself, are not permitted to make promises, such as higher wages, if you agree not sign a union card. Such promises are false and, in fact, illegal.

The fact is that if you vote in the Union, Hotel Management will negotiate a fair contract with the Union. The Hotel will not try to take away any of your current benefits or try to terminate you because of your support for the Union.

I understand that the Union has a history of negotiating contracts which protect and improve the benefits, wages and working conditions that the employees had before they voted in the Union.

The truth is, our managers, including me, have little or no experience in Union Hotels and almost no knowledge about union contracts, benefits choices at Union Hotels or the process of negotiating a contract.

If any manager gave any associate the impression that they would be angry if any associate exercised their right to choose a union, we are very sorry. If any manager made you believe or you understood that the Union would check your immigration status or work papers, I want to make it clear that that is not true. You have an absolute right to join the union. You have this right regardless of your citizenship or immigration status. You should understand that no one in Hotel Management will tolerate it if any Hotel managers treated you differently because you support the union.

Also, it is a fact that if you sign a union card, neither I nor any other manager or supervisor will know about it unless you choose to make it public. The Union cards are confidential and only the union organizers and an independent, impartial arbitrator will see those cards.

I sincerely apologize on behalf of all Hotel managers if the incorrect statements some managers may have made caused any team member any confusion or discomfort. I also apologize if their behavior communicated any disrespect or hostility toward any of the union organizers or toward the team members who support the union.

# EXHIBIT 6

# 522 W. 38ᵗʰ St. NY LLC

c/o Northern Star Realty NY LLC
147-25 Northern Blvd. Suite 3E Flushing, N.Y. 11354

TEL: (718) 460-8028
FAX: (718) 461-6832

VIA FACSIMILE (703) 543-0633 &
FEDERAL EXPRESS #792557201656

September 7, 2007

Crossroads Hospitality Management Company, LLC
4501 N. Fairfax Drive
Arlington, VA 22201

Attn: General Counsel

Re: Management Agreement dated 6/6/2001, assumed and modified 1/21/2005
("Management Agreement") re: Best Western Convention Center Hotel,
New York City – NOTICE OF TERMINATION

Sirs/Madams:

Reference is made to the above-referenced Management Agreement, by which
you have managed and operated our Hotel, the Best Western Convention Center, located
at 522 West 38ᵗʰ Street, City, County and State of New York, since February 7, 2005.

Reference is also made to our written communications to you, one on August 17,
2007, and two on August 21, 2007 and another on August 27, 2007.

You have knowingly violated the Management Agreement.

You have knowingly committed acts and omissions of misfeasance and
malfeasance.

PLEASE TAKE NOTICE, that you are hereby terminated as managing agent
effective as of 3:00 p.m. on Monday, September 10th, 2007.

Crossroads Hospitality Management Company, LLC
September 7, 2007
Page 2 of 2

This Notice is without prejudice to our rights and remedies, at law and in equity.

We will stay in touch to coordinate the transition.  But, your management of the Hotel ceases as of the time and date set forth above.

Your offsite manager is to stay away from the hotel!

522 W. 38th St. NY LLC

By: _____
Show-Lain C. Cheng, CEO

cc:  Interstate Hotel & Resorts
     5605 Mac Arthur Blvd., Suite 1200
     Irving, TX 75038
     Attn:  Wasseem Khan,
            Regional Director of Operation

     Peter Hoffman
     Leslie Ng

# EXHIBIT 7

12175651211                                          01 03 32 p m    09-12 2007    •    2/3



**New York Hotel and Motel Trades Council, AFL-CIO**
707 Eighth Ave . New York, NY 10036  Telephone: (212) 245-8100   Fax: (212) 977-5714
September 12, 2007
<u>VIA Facsimile and Regular Mail</u>

Best Western Convention Center
522 West 38th Street
New York, NY 10018
Attention: General Manager
FAX (212) 947-1545

RE: <u>Best Western Convention Center Hotel</u>

Dear General Manager:

As per our previous demand dated September 5, 2007, pursuant to a card count certifying the Union as the exclusive bargaining representative of the employees at the Best Western Convention Center Hotel, the Union is hereby requesting contract negotiations. Please contact me to arrange mutually convenient dates for negotiations.

In addition, the Union is requesting that you provide the following information in an electronically importable form and format:

1. List of all bargaining unit employees, including, but not limited to, said employees' dates of hire, classifications, departments, wages, hours, benefits (e.g., whether each participates in any health, pension, 401(k) or similar plan and to what extent), phone numbers, and addresses;

2. Any employee handbooks or policies;

3. Any and all information regarding employee benefits, including, but not limited to, any summary plan descriptions, cost per employee for each benefit available, cost paid by the employer and cost paid by the employee, and total, actual monthly cost to the Hotel.

Please provide the requested information as soon as possible, but in no event later than September 14, 2007. Thank you for your attention to this matter.

Sincerely,

Richard Maroko
General Counsel

Cc:    Peter Ward
       Mario Rodriguez
       Robert Brody, Esq.

2125551211                              01 03 16 p m    09 12 2007        1 /3



# UNION FAX

**New York Hotel and Motel Trades Council, AFL-CIO**
707 Eighth Ave., NY, NY 10036 Telephone: (212) 245-8100  Fax: (212) 977-4550

The information contained in this facsimile is confidential information and intended solely for the use of the individual or entity to whom it is addressed. If the recipient of this facsimile is not the intended addressee, or the employee or agent responsible to deliver it to the intended addressee, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original message to us at the above address by mail. Thank you.

Date: 9/12/07    Re: Best Western Convention Center Hotel   Page: 1   of 3

From:  Richard Maroko                     Tel. #: 646-530-1158

Message:

| | Name | Organization | Fax# |
|---|---|---|---|
| 1. To: | General Manager | | (212) 947-1545 |
| 2. To: | | | |
| 3. To: | | | |
| 4. To: | | | |
| 5. To: | | | |

# EXHIBIT 8



**BRODY AND ASSOCIATES** LLC

COUNSELORS AT LAW

WWW.BRODYANDASSOCIATES.COM

179 POST ROAD WEST
WESTPORT, CT 06880
203.965.0560 TEL
203.965.0569 FAX

1177 SUMMER STREET
THIRD FLOOR
STAMFORD, CT 06905
203.965.0560 TEL

67 WALL STREET
SUITE 22ND, PMB0075
NEW YORK, NY 10005
212.561.7397 TEL

September 12, 2007

**VIA FACSIMILE**
Richard Maroko, Esq.
General Counsel
New York Hotel and Motel Trades Council, AFL-CIO
707 Eighth Avenue
New York, New York 10036

Re:    Best Western Convention Center

Dear Mr. Maroko:

We are counsel for United Staffing Company, which is the employer of all the employees at the Best Western Convention Center Hotel ("Hotel"). In case you are not aware, the former employer of all the employees at the Hotel, Interstate Hotel and Resorts ("IHR"), is no longer working at the Hotel or employing any employees there. Moreover, United Staffing Company employs less than a majority of the employees who formerly worked at the Hotel for IHR. Accordingly, the Union no longer represents a majority of the employees at the Hotel and therefore, your demands set forth in your September 12 letter are improper.

If you wish to discuss this further, please call me Monday afternoon, September 17, 2007. I will be unavailable for the next two days.

Yours very truly,

BRODY AND ASSOCIATES, LLC

Robert G. Brody

RGB/2

# EXHIBIT 9

09/18/2007  17:24    7184616832        NORTHERN STAR REALTY                                    PAGE 04/18
09/14/2007  11:29 FAX  2126523383      DREIER LLP                                             002/012

# PITTA & DREIER LLP

ATTORNEYS AT LAW

Michael J. D'Angelo
Direct Dial 212 652 3833
mdangelo@pittadreier.com

September 14, 2007

By Email and Federal Express

Office Administrator
Office of the Impartial Chairman of the
New York City Hotel and Motel Industry
321 West 44th Street
Suite 400
New York, New York 10036

Re:    New York State Hotel and Motel Trades Council, AFL-CIO against
Interstate Hotels & Resorts ("Interstate") and the Best Western
Convention Center Case No. U07-[      ]

Dear Office Administrator:

On behalf of our client, the New York Hotel and Motel Trades Council, we enclose
herewith an Emergency Demand for Arbitration, the Agreement and statutory notices in
connection with the above matter. Please schedule this case as an emergency before any
available arbitrator for September 19 or 20, 2007.

A copy of the Demand, together with a counterpart of this letter, has been served upon
Interstate and Owner by certified mail, return receipt requested and by facsimile.

Thank you for your cooperation.

Sincerely,

Michael J. D'Angelo

cc:  See Distribution List

499 Park Avenue  New York, New York 10022
Telephone 212 652 3890  Facsimile 212 652 3891
111 Washington Avenue  Suite 401  Albany, New York 12210
Telephone 518 449 3320  Facsimile 518 449 5812
www.pittadreier.com

{00288841.DOC;}

## DEMAND FOR EMERGENCY ARBITRATION

Case No. #U07-[    ]           Date: September 14, 2007

| | | |
|---|---|---|
| Employers: | BEST WESTERN CONVENTION CENTER ("Hotel Owner") | 522 West 38th Street New York, New York 10018 Fax (212) 947-1545 |
| | INTERSTATE HOTEL & RESORTS, INC. ("Hotel Manager") | c/o Ms. Annie Dromstedt 4501 North Fairfax Drive. Arlington, CA 22203 Fax (703) 387-3261 |
| Attorney for Owner: | Robert G. Brody, Esq. Brody and Associates, LLC | 179 Post Road West Westport, CT 06880 Fax (203) 965-0569 |
| Attorney for Interstate: | Peter Chatilovicz, Esq. Seyfarth Shaw LLP | 815 Connecticut Ave. NW, Suite 500 Washington, D.C. 20006 Fax (202) 828-5393 |
| Union | New York Hotel and Motel Trades Council, AFL-CIO | 707 Eighth Avenue New York, New York 10036 |
| Attorney for Union: | Pitta & Dreier, LLP By: Michael J. D'Angelo, Esq. | 499 Park Avenue New York, New York 10022 |

The undersigned hereby requests the duly appointed Impartial Chairmen to arbitrate the issues set forth below under the terms of the Agreement between the Union and the Joint Employers dated January 15, 2004 and the Industry-Wide Agreement (the "Agreement" copy annexed).

### ISSUES TO BE ARBITRATED:

1. Has the Hotel violated the Agreement and Award No.s 2007-22 and 2007-20CC (the "Awards") by discharging employees and known Union supporters in retaliation for the exercise of their rights and in order to discourage the assertion of those rights.

2. Has the Hotel violated the Awards and the Agreement by refusing to provide information requested, bargain with the Union concerning the terms and conditions of its employees' employment and denying the Union access to the employees?

3. What shall be the remedy against the Employers, jointly and severally, for any of the above violations if found, including but not limited to backpay, injunctive relief, actual damages, punitive damages, fees and costs, statutory remedies, and the dollar amounts thereof.

PITTA & DREIER LLP
By: _____
Michael J. D'Angelo
ATTORNEYS FOR THE NEW YORK HOTEL AND
MOTEL TRADES COUNCIL, AFL-CIO
499 Park Avenue
New York, New York 10022
Tel (212) 652-3827

Copies of this Demand have been sent to the
Employers on September 14, 2007 by
CERTIFIED MAIL, RETURN RECEIPT
REQUESTED and FEDERAL EXPRESS.

See Distribution List

## PLEASE TAKE NOTICE OF SEC. 630 OF THE BUSINESS CORPORATION LAW OF THE STATE OF NEW YORK

Pursuant to Sec. 630 of the Business Corporation Law of the State of New York, the ten (10) largest shareholders of a corporation may be held jointly and severally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees. For the purpose of the above-cited section, wages or salaries shall specifically include but not be limited to salaries, overtime, vacation, holiday and severance pay; employer contributions to pension or annuity funds; and any other moneys properly due or payable for services rendered by such laborers, servants, or employees.

By reason of our claim against you for certain monies as defined above, it is the intention of the UNION, on behalf of your corporation's bargaining unit employees, to hold you personally liable for same.

PLEASE TAKE FURTHER NOTICE, that pursuant to Sec. 624 of the Business Corporation Law of the State of New York, we demand the right to examine the records of your corporation in order to ascertain names and addresses of all shareholders, the numbers and class of shares held by each, and the dates when they respectively became owners of record thereof. This information may be subpoenaed in an arbitration or other legal proceedings.

## PLEASE TAKE NOTICE THAT SEC. 198-C OF THE LABOR LAW OF THE STATE OF NEW YORK PROVIDES:

§198-c. Benefits or wage supplements (Emphasis added)

In addition to any other penalty or punishment otherwise prescribed by law, any employer who is party to an agreement to pay or provide benefits or wage supplements to employees or to a third party or fund for the benefit of employees and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within thirty days after such payments are required to be made, shall be guilty of a misdemeanor, and upon conviction shall be punished as provided in section one hundred ninety-eight-a of this article. Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of a misdemeanor.

As used in this section, the term "benefits" or "wage supplements" includes, but not limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, severance or holiday pay.

Dated: New York, New York
September 14, 2007

{00288848.DOC;}

09/18/2007  17:24  7184616832    DREIER LLP    NORTHERN STAR REALTY    PAGE 07/19



# AGREEMENT

**MEMORANDUM OF AGREEMENT** entered into this 19th day of January, 2004 between the NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO ("Union") and INTERSTATE HOTELS AND RESORTS and/or affiliate(s) ("Interstate").

NOW, THEREFORE, the parties agree as follows:

1.   Effective as of the date of this Agreement and retroactive to July 1, 2001 Interstate agrees to be bound by the Accretion and Card Check/Neutrality provisions of the Memorandum of Understanding dated June 15, 2000 between the Union and Hotel Association of New York City, Inc. ("Hotel Association"), such that the Union shall be able to apply the Accretion and Card Check/Neutrality provisions to any hotel or commercial unit in the New York City area which came or comes to be owned, operated or managed by Interstate since July 1, 2001, without prejudice or limitation. The parties agree that this paragraph shall not be applicable to the Courtyard by Marriott JFK located at 145-11 North Conduit Avenue, Jamaica, New York by virtue of Interstate's management thereof.

2.   Interstate agrees to adopt, assume and be bound by all the terms and conditions of employment, both economic and non-economic in nature, of any successor collective bargaining agreement to the Industry Wide Agreement between the Union and the Hotel Association, which expires on June 30, 2006 ("IWA") negotiated between the Hotel Association and Union, and/or shall move to extend, supersede and/or modify the IWA, on its own behalf and on behalf of any hotel or commercial unit which it currently or hereinafter owns, operates or manages in the New York City area.

3.   The Union agrees that the Park Central Hotel shall be permitted to lease out part of its property to Starbucks who will operate a retail store on said property. Provided that there shall be no entrance or access to Starbucks from inside the Hotel and that no Starbucks employees will perform any duties or functions currently performed by bargaining unit members, Starbucks will not be considered a commercial unit within the meaning of the IWA nor subject to the accretion and area standards provisions of the IWA.

Union 00144

09/18/2007  17:24    7184618832    NORTHERN STAR REALTY    PAGE 08/19

4.    Any dispute regarding the interpretation or application of this Agreement shall be subject to the grievance and arbitration provisions of the IWA, which are incorporated herein by reference.

Dated: January 16, 2004

NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO

INTERSTATE HOTELS AND RESORTS

By: _____

By: _____



AGREEMENT entered into so as to be effective July 1, 2001 between the HOTEL ASSOCIATION OF NEW YORK CITY, INC., in its own behalf and in behalf of the HANYC BARGAINING GROUP HOTELS[1] (hereinafter collectively referred to as the EMPLOYER or the ASSOCIATION), and the operators of hotels and motels who are active members of the ASSOCIATION and with respect to whom the UNION (as herein below described) presently has contractual relations, and the operators of hotels, motels, and concessionaires with respect to whom the UNION may be hereafter recognized as sole collective bargaining agent for the employees of such hotels, motels, and concessionaires; and who shall become parties hereto by agreeing to this Agreement, each and every such hotel, motel, and concessionaire being hereinafter referred to as the EMPLOYER, and the NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO, hereinafter called the UNION, in its own behalf and in behalf of its members, now employed or hereafter to be employed by the EMPLOYER.

### WITNESSETH:

WHEREAS, the ASSOCIATION is an organization whose active members are engaged in the hotel business in the City of New York and one of whose objects is to promote fair and harmonious labor relations between hotel keepers and their employees, and

WHEREAS, the parties hereto are signatories to a Collective Bargaining Agreement signed June 26, 1985, as amended by a Memorandum of Understanding signed January 30, 1990 (hereinafter collectively referred to as the "1990 Agreement"), which 1990 Agreement by its terms, expired on June 30, 1985, and was extended by the parties to July 4, 1995, and further amended by a Memorandum of Understanding signed July 6, 1995 (hereinafter collectively referred to as the "1995 Agreement"), which Agreement by its terms, expired on June 30, 2001;

WHEREAS, the parties hereto, desiring to cooperate to stabilize such labor relations by establishing general standards of wages, hours of work, and other conditions of employment, and providing arbitral machinery whereby disputes and grievances between employers and employees may be adjusted without resort to strikes, lockouts or other interferences with the continued and smooth operation of the hotel business, have agreed,

[1] A list of HANYC Bargaining Group Hotels has been provided by the Association.

7

management or operational control of the Hotel or Condominium such that the party (Transferor) assuming such majority ownership, management or operational control must assume and be bound in writing to this Agreement.

Not less than five (5) business days prior to the closing of the transaction, the EMPLOYER shall give the UNION notice in writing of the transaction between the EMPLOYER and the transferee and the notice to the UNION will provide the full and complete identity of the transferee, together with a duly executed copy of the pertinent portion of the transaction agreement between the EMPLOYER and the transferee pursuant to which the transferee agrees to assume this Agreement.

Said notice will be held by the UNION in strict confidence and the UNION, upon request of the EMPLOYER, will agree to a confidentiality pledge upon terms mutually acceptable to the EMPLOYER and the UNION; provided however that no confidentiality pledge will be instituted upon the EMPLOYER's violation of this Section 59. If the UNION is provided with a signed copy of the portion of the agreement where the transferee agrees to assume this Agreement, the UNION will not contest the transferee prior to the closing.

The EMPLOYER and UNION agree that, if a determination is made by the Impartial Chairman that a violation of Section 59 has occurred, then in such case, the violation will be deemed to be irreparably harmful to the UNION and its members. In such event, the UNION may seek such relief as is necessary to redress any such violation and irreparable harm, including but not limited to the award of monetary damages, and/or injunctive relief, either from the Office of the Impartial Chairman, the National Labor Relations Board, a court of competent jurisdiction or such other forum as deemed appropriate by the UNION.

### ACCRETION AND NEUTRALITY/CARD CHECK

60.  (A) Accretion

EMPLOYER agrees to the accretion of any and all hotel or condominium properties which EMPLOYER is or becomes manager to the New York City area to the bargaining unit(s) presently or hereafter covered by the Industry Wide Agreement, or any successor collective bargaining agreement thereto, and that all of the terms and conditions set forth in the

70

industry Wide Agreement or its successor shall be immediately applicable to the accreted bargaining unit(s).

The parties acknowledge that they have negotiated and exchanged valuable consideration in reliance upon the lawfulness and validity of their agreement but recognize the complexity and change inherent in the legal doctrine of accretion. Nevertheless, in the event that any extension of a hotel or commercial risks pursuant to these provisions, applied to the fullest extent of their legal doctrine, should be ruled ineffective, invalid, or unenforceable by competent legal authority, then the parties hereby agree that the neutrality and card count agreement annexed hereto in Addendum IV shall apply in that hotel or condominium. For the purposes of this provision, "competent legal authority" shall mean the Office of the Impartial Chairman, the Regional Director for Region 2 or 29 of the National Labor Relations Board (NLRB), the United States District Courts for the Southern or Eastern District of New York, or the United States Court of Appeals for the Second Circuit.

The parties agree that they shall meet to review and discuss such particular facts and circumstances of either party may contend warrants mutually agreed upon revisions to the provisions of the Industry Wide Agreement, or successor collective bargaining agreement as the case may be.

(B) Neutrality/Card Check

In addition to and without limiting the other provisions of this Section 60, EMPLOYER shall abide and be bound by the neutrality and card check provisions annexed hereto as Addendum IV and incorporated herein by reference.

### MAINTENANCE AND ELECTRICAL WORK

61.  It is intended that employees that are classified as in the "Maintenance Department" shall include those engaged in doing plastering, minor brick tile repair, lathing and cement work; carpentry; plumbing and steamfitting; upholstering and mattress making; painting; furniture varnishing and paperhanging; tin smithy and maintaining house radio systems; mechanical work on elevators; machine work; locksmithing and key work; silversmithing, coppersmithing and tinsmithing; boiler repair work.

The painting, decorating and paperhanging includes the service

71

after a union is decertified as bargaining agent. All contributing employers
are urged to obtain legal advice as to the foregoing with respect liability.

## ADDENDUM IV

Company Name

Address

Dear _____

This letter agreement will confirm the discussions we have had
regarding the procedures to be followed by the New York Hotel & Motel
Trades Council ("Union") to organize certain employees of hotels and con-
cessionaires at which Company acquires an ownership, management or
control interest and the Union does not have representational rights,
("Hotel"), and various other matters, including the resolution of disputes
related to such organization drive and/or the terms of this letter agree-
ment ("Agreement") and any subsequent collective bargaining agreement.

1. Use of Impartial Chairman

The Impartial Chairman of the Hotel Industry of New York City
("Impartial Chairman") will conduct a "card count" to determine whether the
Union has obtained valid cards from a majority of full-time and regular part-
time employees of the Hotel employed in job classifications listed in
Schedule A to the Industry Wide Agreement between the Union and the
Hotel Association of New York City Inc. ("HWA"), designating the Union as
their representative for purposes of collective bargaining (the "Cards") and
to certify the result of his card count, all in accordance with the procedures
set forth in Section (11) below. Full-time and regular part-time employees of
the Hotel employed in job classifications listed in Schedule A shall be
referred to throughout this Agreement as "Employees".

The Impartial Chairman also will resolve any and all disputes of any
kind whatsoever arising out of this Agreement, or concerning the meaning
or interpretation of any and all matters discussed herein, including but not
limited to the terms and provisions of any collective bargaining agreement
entered, or to be entered into, by and between the Hotel and the Union.
Any costs incurred by the parties in instituting proceedings before the

111

Impartial Chairman, or defending against the same, shall be the responsibility of the respective party. Costs charged by the Impartial Chairman shall be shared and paid equally by the parties. Any arbitration award or decision issued by the Impartial Chairman, written or otherwise, shall be final and binding upon the parties, and subject to the provisions of Article 75 of the New York Civil Practice Law and Rules (CPLR) including, but not limited to, the procedure to vacate or modify an award pursuant to Section 7511 of the CPLR, and shall be enforceable in a court of competent jurisdiction.

## 2. Union Access to the Hotel

The Union will begin its organization of the Hotel's employees at any time upon notice to the Hotel's General Manager. The Union will be permitted to have its organizers or representatives enter the Hotel to meet with Employees during the Employees' non-working times (for example, before work, after work, and during shift changes, meals and breaks) and/or during such other periods as the parties may mutually agree upon in writing. The Union may engage in organizing efforts in non-public areas of the Hotel such as the Employee mealrooms and locker rooms or such other non-public areas as the parties may mutually agree upon.

Within three (3) days following receipt of the above described written notice of intent to organize Employees, the Employer will furnish the Union with a complete list of such Employees, including both full and part-time Employees, showing their job classifications and departments, work schedules, wages, and benefits, and the home addresses and telephone numbers of all Employees. Thereafter, the Employer will promptly provide updated lists for the duration of the organizing drive.

There shall be no lockouts of the Employees by the Hotel and the Union shall not cause any disruption of work by the Employees during the organizing activity, nor shall there be any picketing, strikes, slow downs or other work stoppages at the Hotel by or caused by the Union for any purpose, including boycotts, ... contract negotiations, dispute publication, enforcement of the terms of this Agreement. The "no lockout, no strike" provisions hereof shall not apply. In the event either party fails to abide by this award or decision of the Impartial Chairman within three (3) business days after issuance. Both the Hotel and the Union agree to respect the National

Labor Relations Act ("NLRA") Section 7 rights of employees, during the Union's organizing drive, and neither party shall, or be required to, act in contravention of those rights. The Hotel specifically agrees that its supervisory employees, its agents and/or its representatives will not act or make any statements that will directly or indirectly imply the Hotel's opinion as to whether or not the any layoffs should support the Union or as to the reputation of the Union or any of its officers and affiliated local unions or as to the reputation of any of the officers and the Union's affiliate local unions and/or their parent unions.

## 3. Determination of Majority Status

At any time after the commencement date of the Union's organizing effort, the Union may request that a card count be conducted by the Impartial Chairman. The Union shall initiate that process by advising the Hotel's General Manager in writing ("Notification Letter") that it represents a majority of the full-time and regular part-time employees employed by the Hotel in the job classifications set forth in the NRA Schedule A. That date of the Union's Notification Letter shall be the date ("Notification Date") used for purposes of determining the composition of the list of the names of the Employees to be furnished by the Hotel to the Impartial Chairman, so that all full-time and regular part-time Employees of the Hotel employed on or before the Notification Date will be the only Employees whose names will appear on the list.

Within forty-eight (48) hours of the delivery of the Notification Letter by the Union to the Hotel indicating its majority status, the Union shall notify the Impartial Chairman in writing that its services are requested for purposes of conducting a card count. The Union shall immediately confirm to the Hotel's General Manager, that the Impartial Chairman has retained jurisdiction of the card count proceeding. As soon as practicable thereafter, but in any event no later than seven (7) days prior the date of the Union's written card count request made to the Impartial Chairman, the Union shall furnish to the Impartial Chairman the Cards it has obtained from the Employees, and the Hotel shall furnish to the Impartial Chairman the list containing the names, job classifications and social security numbers of Employees employed as of the date of the Union's Notification Letter (with a copy to the Union) together with copies of official employment documents contain-

112
113

09/18/2007  17:24    7184616832        NORTHERN STAR REALTY        PAGE  13/19

ing the signatures of each of the Employees (e.g. Forms I-9, Form W4 or similar documents), in care of the Office of the Impartial Chairman, 321 West 44th Street, New York, New York 10036.

Within forty-eight (48) hours after his receipt of the documents described above, the Impartial Chairman shall conduct a card count by checking the Cards against the list of Employees and by comparing the Employees' names and signatures appearing on the Cards to the names and signatures appearing on the employment documents supplied to the Impartial Chairman by the Hotel. At the conclusion of the card count, the Impartial Chairman shall inform the parties of the results of his count and shall certify in writing that either the Union has or has not been selected by a majority of eligible Employees of the Hotel as their collective bargaining representative. Both the Hotel and the Union agree to abide by the determinations made by the Impartial Chairman regarding any challenges either to the validity of the Cards, the eligibility of Employees, the appropriateness of the unit and/or to the majority status of the Union.

If, after the conduct of the card count, the Union fails to be certified the Impartial Chairman as the majority representative of the eligible Employees, this Agreement shall be deemed to continue in full force and effect, unless it is otherwise terminated in writing by mutual agreement of the parties. Notwithstanding any of the foregoing specifically to the contrary, the Hotel and Union also agree that the Impartial Chairman shall be empowered to issue such remedial orders as are consistent with applicable NLRB standards and necessary during and after the pendency of the Union's organization drive to ensure the maintenance of the neutral environment and/or to penalize the Hotel or the Union for violating their obligations hereunder, including an order to bargain in accordance with applicable NLRB standards, and/or monetary or punitive damages to offset possible NLRB standards.

If the Union is certified as the majority representative of the Employees, the Hotel must recognize the Union and the Hotel and Union will commence negotiations within seven (7) calendar days of the date of the certification, at a mutually agreeable time and place, for a collective bargaining agreement covering wages, hours and other terms and conditions of employment (the "Agreement").

I believe that the above correctly describes our discussions on this matter. Please signify your concurrence by signing where indicated below

114

and returning one copy to me, the other being for your files.

Very truly yours,

Peter Ward
President

Executed, Agreed and Accepted
on behalf of Hotel/Company

By:_____
Name:_____
Title:_____
Date:_____

ADDENDUM V

Extra Room/Wage Equalization Lawsuit

a) Effective August 1, 1990:

(i) Room attendants shall no longer be assigned to make up extra rooms without being compensated for them at the extra room rates specific of in the Agreement.

(ii) The base weekly rates of pay for both bath and night shall room attendants will be equalized to the base weekly rates of pay of day shift room attendants.

In consideration of the foregoing, the parties shall immediately enter into a stipulation of settlement, and the Trades Council shall do everything necessary in accordance therewith, withdrawing and terminating the various actions in the United States District Court for the Southern District of New York entitled and roles titled as: New York Hotel and Motel Trades Council, AFL-CIO, et al. V. Hotel Association of New York City, Inc. et al., 90 Civ. 0218, 0223, 0225, 0226, 0227, 0228, 0229, 0231, 1020 (etc.) and all proceedings relating thereto, including any and all charges or complaints filed with the Equal Employment Opportunity

115

09/18/2007  17:24    7184616832        NORTHERN STAR REALTY                    PAGE  14/19

## DISTRIBUTION LIST

TO:  Owner of BEST WESTERN CONVENTION
     CENTER
     522 West 38th Street
     New York, New York 10018
     Fax (212) 947-1545

BY:  Certified Mail, RRR and Facsimile

TO:  INTERSTATE HOTELS & RESORTS, INC.
     c/o Ms. Annie Dremsledt
     4501 North Fairfax Drive
     Arlington, VA 22203
     Fax: (703) 387-3261

BY:  Certified Mail, RRR & Facsimile

     Robert G. Brody, Esq.
     Brody and Associates, LLC
     179 Post Road West
     Westport, CT 06880
     Fax: (203) 965-0569

BY:  Email to Facsimile

     Peter Chatilovicz, Esq.
     Seyfarth Shaw
     815 Connecticut Avenue, N.W.
     Suite 500
     Washington, D.C. 20006
     Fax: (202) 828-5393

BY:  Email & Facsimile

Cc:  Peter Ward
     Brian Lysell
     Richard Maroko, Esq
     Vincent F. Pitta, Esq.
     Barry N. Saltzman, Esq.
     Joseph Farelli, Esq.

{00288848.DOC;}

09/18/2007  17:24    7184616832    NORTHERN STAR REALTY    NO. 9974    P. 1/3

PAGE 15/19

SEP. 14. 2007  1:09PM

### OFFICE OF THE IMPARTIAL CHAIRPERSON
321 West 44th Street, Suite 400
New York, NY 10036
TEL: (212) 541-7212    FAX: (212) 541-9356

## NOTICE OF
## EMERGENCY HEARING
## FAX COVER SHEET

**TO:**    Paul Hewitt
Annie Dremstedt/Laura FitzRandolph
Interstate Hotels & Resorts
**Fax No.:**    703-387-3261

Robert G. Brody, Esq.
Brody and Associates, LLC
**Fax No.:**    203-965-0569

Wei Jei Liao
Best Western Convention Center
**Fax No.:**    947-1545

Peter Chatilovicz, Esq.
Seyfarth Shaw, LLP
**Fax No.:**    202-828-5393

KANE KESSLER PC - Attn: Doris Guntner, LA
**Fax No.:**    541-8799

PITTA & DREIER LLP/Attn: Vincent Pitta, Esq.; Barry Saltzman,
Esq., Joseph Farelli, Esq.; Jane Lauer Barker, Esq.; Susan
Gempler; Michael D'Angelo, Esq.
**Fax No.:**    652-3891

| | |
|---|---|
| Madelyn & Talia | 977-4550 |
| Rich Maroko | 977-4550 |
| Richard Amato | 764-0243 |
| Ward/Lysell | 977-5714 |

**RE:**    HTC #U07-398/EMERGENCY

**FROM:**    Cherrll Dunn, Assistant to IC Administrator

**DATE:**    September 14, 2007

No. of pages:  3

09/18/2007  17:24    7184616832                  NORTHERN STAR REALTY           PAGE 16/19
SEP. 14. 2007  1:09PM                                                          NO. 9974   P. 2/3

### OFFICE OF THE IMPARTIAL CHAIRPERSON

321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036

TEL: (212) 541-7212  FAX: (212) 541-0356

HOTEL ASSOCIATION OF NEW YORK CITY, INC.                NEW YORK HOTEL & MOTEL TRADES COUNCIL

                                                        9/14/2007

                                                        Mr. Peter Ward
Paul Hewitt/Annie Dremstedt                             New York Hotel & Motel Trades Council
Interstate Hotels & Resorts                             7C7 Eighth Avenue
4501 North Fairfax Drive                                New York, NY 10036
Arlington, VA 22203

                        <u>Sent Via Facsimile to All Parties</u>

    A hearing will be held in this office (321 West 44th Street, Suite 400, New York City) on
**Thursday, September 20, 2007 at 2:00 PM** in the matter of the request of the Hotel Trades Council
concerning:

    #U07-398/All Employees/Emergency hearing requested by the New YOrk Hotel & Motel
    Trades Council, AFL-CIO re:  1) Has the Hotel violated Agreement and Award #2007-22 &
    2007-20CC by discharging employees & known Union supporters in retaliation for the
    exercise of their rights & in order to discourage the assertion of those rights?  2) Has the
    Hotel violated the Awards & the Agreement by refusing to provide information requested,
    bargain with the Union concerning the terms and conditions of its employees' employment &
    denying the Union access to Employees?  3) What shall be the remedy sought against the
    Employers, jointly & severally, for any of the above violations if found, including but not limited
    to backpay, injunctive relief, actual damages, punitive damages, fees & costs, statutory
    remedies, & the dollar amounts thereof.

    In order that your interests may be protected, it is essential that you be present or
represented at that time.

cc:    David Rothfeld, Esq.
       Stephen Steinbrecher, Esq.
       Niki Franzitta, Esq.
       Christian White, Esq.
       Richard Amato
       Vincent Pitta, Esq.
       Barry Saltzman, Esq.
       Jane Lauer Barker, Esq.
       Joseph Farelli, Esq.
       Michael D'Angelo, Esq.
       Brian Lysell
       Madelyn Rivera
       Susan Gempler
       Rich Maroko
       Peter Chatilovicz, Esq.

09/18/2007  17:24    7184616832                     NORTHERN STAR REALTY                              PAGE 17/19
SEP. 14. 2007  1:09PM                                                                    NO. 9974   P. 3/3

## OFFICE OF THE IMPARTIAL CHAIRPERSON

321 WEST 44TH STREET, SUITE 400
NEW YORK, NY 10036

TEL: (212) 541-7212   FAX: (212) 541-9350

HOTEL ASSOCIATION OF NEW YORK CITY, INC.

NEW YORK HOTEL & MOTEL TRADES COUNCIL

9/14/2007

Mr. Peter Ward
New York Hotel & Motel Trades Council
707 Eighth Avenue
New York, NY 10036

Wei Jei Liao
General Manager
Best Western Convention Center
522 West 38th Street
New York, NY 10018

### Sent Via Facsimile to All Parties

A hearing will be held in this office (321 West 44th Street, Suite 400, New York City) on **Thursday, September 20, 2007 at 2:00 PM** in the matter of the request of the Hotel Trades Council concerning:

#U07-398/All Employees/Emergency hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO re: 1) Has the Hotel violated Agreement and Award #2007-22 & 2007-20CC by discharging employees & known Union supporters in retaliation for the exercise of their rights & in order to discourage the assertion of those rights? 2) Has the Hotel violated the Awards & the Agreement by refusing to provide information requested, bargain with the Union concerning the terms and conditions of its employees' employment & denying the Union access to Employees? 3) What shall be the remedy sought against the Employers, jointly & severally, for any of the above violations if found, including but not limited to backpay, injunctive relief, actual damages, punitive damages, fees & costs, statutory remedies, & the dollar amounts thereof.

In order that your interests may be protected, it is essential that you be present or represented at that time.

cc:    David Rothfeld, Esq.
       Stephen Steinbrecher, Esq.
       Niki Franzitta, Esq.
       Christian White, Esq.
       Richard Amato
       Vincent Pitta, Esq.
       Barry Saltzman, Esq.
       Jane Lauer Barker, Esq.
       Joseph Farelli, Esq.
       Michael D'Angelo, Esq.
       Brian Lysell
       Madelyn Rivera
       Susan Gempler
       Rich Maroko
       Robert Brody, Esq.

### OFFICE OF THE IMPARTIAL CHAIRPERSON
321 West 44th Street, Suite 400
New York, NY 10036
TEL: (212) 541-7212    FAX: (212) 541-9356

### NOTICE OF EMERGENCY
### PEREMPTORY (V HOTEL) HEARING
### FAX COVER SHEET

**TO:**     Paul Hewitt
           Annie Dremstedt/Laura FitzRandolph
           Interstate Hotels & Resorts
           **Fax No.:**    703-387-3261

           Robert G. Brody, Esq.
           Brody and Associates, LLC
           **Fax No.:**    203-965-0569

           Wei Jei Liao
           Best Western Convention Center
           **Fax No.:**    947-1545

           Peter Chatilovicz, Esq.
           Seyfarth Shaw, LLP
           **Fax No.:**    202-828-5393

           KANE KESSLER PC - Attn: Doris Guntner, LA
           **Fax No.:**    541-9799

           PITTA & DREIER LLP/Attn: Vincent Pitta, Esq.; Barry Saltzman,
           Esq., Joseph Farelli, Esq.; Jane Lauer Barker, Esq.; Susan
           Gempler; Michael D'Angelo, Esq.
           **Fax No.:**    652-3891

           | | |
           |---|---|
           | Madelyn & Talia | **977-4550** |
           | Rich Maroko | **977-4550** |
           | Richard Amato | **764-0243** |
           | Ward/Lysell | **977-5714** |

**RE:**     **HTC #U07-398/EMERGENCY**

**FROM:**   Cherril Dunn, Assistant to IC Administrator

**DATE:**   September 19, 2007

No. of pages: 3

SEP. 19. 2007 12:01PM                                           NO. 0013    P. 2/3

## OFFICE OF THE IMPARTIAL CHAIRPERSON

### 321 WEST 44TH STREET, SUITE 400
### NEW YORK, NY 10036

TEL: (212) 541-7212    FAX: (212) 541-9356

HOTEL ASSOCIATION OF NEW YORK CITY, INC.        NEW YORK HOTEL & MOTEL TRADES COUNCIL

                                                9/19/2007

Paul Hewitt/Annie Dremstedt                     Mr. Peter Ward
Interstate Hotels & Resorts                     New York Hotel & Motel Trades Council
4501 North Fairfax Drive                        707 Eighth Avenue
Arlington, VA 22203                             New York, NY 10036

### Sent Via Facsimile to All Parties
### MARKED PEREMPTORILY AGAINST MANAGEMENT

A hearing will be held in this office (321 West 44th Street, Suite 400, New York City) on **Wednesday, September 26, 2007 at 1:00 PM** in the matter of the request of the Hotel Trades Council concerning:

#U07-398/All Employees/Emergency hearing requested by the New YOrk Hotel & Motel Trades Council, AFL-CIO re: 1) Has the Hotel violated Agreement and Award #2007-22 & 2007-20CC by discharging employees & known Union supporters in retaliation for the exercise of their rights & in order to discourage the assertion of those rights?  2) Has the Hotel violated the Awards & the Agreement by refusing to provide information requested, bargain with the Union concerning the terms and conditions of its employees' employment & denying the Union access to Employees?   3) What shall be the remedy sought against the Employers, jointly & severally, for any of the above violations if found, including but not limited to backpay, injunctive relief, actual damages, punitive damages, fees & costs, statutory remedies, & the dollar amounts thereof.

In order that your interests may be protected, it is essential that you be present or represented at that time.

cc:    David Rothfeld, Esq.
       Stephen Steinbrecher, Esq.
       Niki Franzitta, Esq.
       Christian White, Esq.
       Richard Amato
       Vincent Pitta, Esq.
       Barry Saltzman, Esq.
       Jane Lauer Barker, Esq.
       Joseph Farelli, Esq.
       Michael D'Angelo, Esq.
       Brian Lysell
       Madelyn Rivera
       Susan Gempler
       Rich Maroko
       Peter Chatilovicz, Esq.

## OFFICE OF THE IMPARTIAL CHAIRPERSON

### 321 WEST 44TH STREET, SUITE 400
### NEW YORK, NY 10036

#### TEL: (212) 541-7212  FAX: (212) 541-9356


HOTEL ASSOCIATION OF NEW YORK CITY, INC.

NEW YORK HOTEL & MOTEL TRADES COUNCIL

9/19/2007

Mr. Peter Ward
New York Hotel & Motel Trades Council
707 Eighth Avenue
New York, NY 10036

Wei Jei Liao
General Manager
Best Western Convention Center
522 West 38th Street
New York, NY 10018


### Sent Via Facsimile to All Parties
### MARKED PEREMPTORILY AGAINST MANAGEMENT


A hearing will be held in this office (321 West 44th Street, Suite 400, New York City) on **Wednesday, September 26, 2007 at 1:00 PM** in the matter of the request of the Hotel Trades Council concerning:

#U07-398/All Employees/Emergency hearing requested by the New York Hotel & Motel Trades Council, AFL-CIO re: 1) Has the Hotel violated Agreement and Award #2007-22 & 2007-20CC by discharging employees & known Union supporters in retaliation for the exercise of their rights & in order to discourage the assertion of those rights? 2) Has the Hotel violated the Awards & the Agreement by refusing to provide information requested, bargain with the Union concerning the terms and conditions of its employees' employment & denying the Union access to Employees?  3) What shall be the remedy sought against the Employers, jointly & severally, for any of the above violations if found, including but not limited to backpay, injunctive relief, actual damages, punitive damages, fees & costs, statutory remedies, & the dollar amounts thereof.

In order that your interests may be protected, it is essential that you be present or represented at that time.

cc:    David Rothfeld, Esq.
        Stephen Steinbrecher, Esq.
        Niki Franzitta, Esq.
        Christian White, Esq.
        Richard Amato
        Vincent Pitta, Esq.
        Barry Saltzman, Esq.
        Jane Lauer Barker, Esq.
        Joseph Farelli, Esq.
        Michael D'Angelo, Esq.
        Brian Lysell
        Madelyn Rivera
        Susan Gempler
        Rich Maroko
        Robert Brody, Esq.

# EXHIBIT 10

☑002/005

09/18/2007 12:18 FAX

# PITTA & DREIER LLP

ATTORNEYS AT LAW

Barry N. Saltzman *Partner*
Direct Dial 212 652 3827
bsaltzman@pittadreier.com

September 18, 2007

**By Email**
Robert G. Brody, Esq.
BRODY AND ASSOCIATES, LLC
179 Post Road West
Westport, CT 06880

Re:    **Best Western Convention Center**

Dear Mr. Brody:

Your letter dated September 12, 2007 to Richard Maroko, General Counsel of the New York Hotel & Motel Trades Council, AFL-CIO ("Union") has been referred to this office by the Union for response.

We believe that the factual and legal premises of your letter are faulty. Enclosed is an arbitral subpoena duces tecum to accompany the demand and notices served September 14, 2007. Please confirm that the Hotel and its agent United Staffing Company will honor the subpoena and appear at the hearing scheduled for this Thursday, September 20, 2007 at 2:00 p.m.

Very truly yours,

Barry N. Saltzman

BNS/seg

cc:    Richard Maroko, Esq. (w/enc)
       Vincent F. Pitta, Esq. (w/enc)
       Michael D'Angelo, Esq. (w/enc)

499 Park Avenue  New York, New York 10022
Telephone 212 652 3890  Facsimile 212 652 3891

111 Washington Avenue  Suite 401  Albany, New York 12210
Telephone 518 449 3320  Facsimile 518 449 5812

{00289572.DOC;}                    www.pittadreier.com

BEFORE THE OFFICE OF THE IMPARTIAL CHAIRPERSON
OF THE HOTEL INDUSTRY OF NEW YORK CITY

- - - - - - - - - - - - - - - - - - - - - - - - - - X

In the Matter of the Arbitration Between

THE NEW YORK HOTEL AND MOTEL
TRADES COUNCIL, AFL-CIO,

                                    Union,

                    - and -

BEST WESTERN CONVENTION CENTER
HOTEL

                                    Hotel.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

SUBPOENA DUCES TECUM

CASE NO.: U07-398

## THE PEOPLE OF THE STATE OF NEW YORK

**RE:**   Best Western Convention Center Hotel

**TO:**   General Manager, Best Western Convention Center
522 W. 38th Street, New York, N.Y. 10018
Fax (212) 947-1545

**WE COMMAND YOU,** that all business and excuses being laid aside, to produce at the Offices of the Impartial Chairperson, 321 West 44th Street, Suite 400, New York, New York  10036, Attn: Barry N. Saltzman, Esq., on or before 12:00 p.m. on September 20, 2007 true copies or originals of the following documents:

1.      List of all bargaining unit employees, including but not limited to, said employees' dates of hire, classifications, departments, wages, hours, benefits (e.g., whether

{00289584.DOC;2}

each participates in any health, pension, 401(k) or similar plan and to what extent), phone numbers, and addresses.

2. Any documents relating to Hotel's or management company's employment policies, procedures, rules or regulations.

3. Any and all documents relating to employee benefits, including, but not limited to, any summary plan descriptions, cost per employee for each benefit available, cost paid by the employer and cost paid by the employee, and total, actual monthly cost to the Hotel.

4. Any and all documents, including but not limited to emails, correspondence, notices relating to 2007 communications by and between the Hotel and (a) Interstate or (b) United Staffing Co. ("Staffing").

5. Any an all documents relating to financial transactions between the Hotel and Staffing.

6. Any and all documents relating to the ownership, corporate, financial, or operational structure of the Hotel.

7. A list of all employees who worked at the Hotel as of August 24, 2007 to and including the date hereof, including the dates of hire and, where applicable, date of termination for each.

8. A list of all employees who worked at the Hotel as of September 11, 2007 and thereafter.

9. Any and all agreement(s) between the Hotel and Interstate.

10. Any and all agreement(s) between the Hotel and Staffing.

11.    Any and all documents relating to the employment of employees at the

Hotel subsequent to September 10, 2007.

Dated: New York, New York
      September 18, 2007

                         PITTA & DREIER LLP

                         By:

                             BARRY N. SALTZMAN
                             Attorneys for the Union
                             499 Park Avenue
                             New York, New York 10022
                             (212) 652-3831

Index No.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

522 W. 38th St. NY LLC,

Petitioner,

-against-

NEW YORK HOTEL & MOTEL,
TRADES COUNCIL, AFL-CIO,

Respondent.

NOTICE OF PETITION AND PETITION

Brody and Associates, LLC
Attorney s for Petitioner
67 Wall Street, Suite 2211
New York, New York 10005

203-465-0560

To

Attorney(s)   for

Service of a copy of the within                    is hereby admitted.

Dated,

Attorney(s)   for

ALLSTATE INTERNATIONAL INC.
87101-BF • 83108-BL • 87105-OY • 47110-WH

#217259

---

PLEASE TAKE NOTICE

☐   that the within is a (certified) true copy of a
     entered in the office of
     the clerk of the within named Court on

☐   that an Order of which the within is a true copy
     will be presented for settlement to the
     Honorable                                one of
     the judges of the within named Court, at
                                              on
                       . at

Dated: _____

Brody and Associates, LLC
Attorney s for Petitioner
67 Wall Street, Suite 2211
New York, New York 10005

---

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney
admitted to practice in the courts of New York State, certifies that,
upon information and belief and reasonable inquiry, (1) the
contentions contained in the annexed document are not frivolous
and that (2) if the annexed document is an initiating pleading, (i)
the matter was not obtained through illegal conduct, or that if it
was, the attorney or other persons responsible for the illegal
conduct are not participating in the matter or sharing in any fee
earned therefrom and that (ii) if the matter involves potential
claims for personal injury or wrongful death, the matter was not
obtained in violation of 22 NYCRR 1200.41-a.

Dated: 9/20/07   _____
                    Print (type) name

Brody and Associates, LLC
Attorney · for Petitioner
67 Wall Street, Suite 2211
New York, New York 10005

To
Attorney(s)   for