# Exhibit C

Case 1:07-cv-08230-JSR    Document 3-4    Filed 09/25/2007    Page 1 of 7

May-19-2004 01:32pm  From-NY HOTEL & MOTEL TRADES COUNCIL    +2120776714    T-220  P.002/021  F-816



Union 2

## AGREEMENT

**MEMORANDUM OF AGREEMENT** entered into this 15th day of January, 2004 between the NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO ("Union") and INTERSTATE HOTELS AND RESORTS and its affiliates (hereinafter ").

NOW, THEREFORE, the parties agree as follows:

1. Effective as of the date of this Agreement and retroactive to July 1, 2001 Interstate agrees to be bound by the Accretion and Card Count/Neutrality provisions of the Memorandum of Understanding dated June 15, 2000 between the Union and Hotel Association of New York City, Inc. ("Hotel Association"), such that the Union shall be able to apply the Accretion and Card Count/Neutrality provisions to any hotel or concessionaire in the New York City area which came or comes to be owned, operated or managed by Interstate since July 1, 2001, without prejudice or limitation. The parties agree that this paragraph shall not be applicable to the Courtyard by Marriott JFK located at 145-11 North Conduit Avenue, Jamaica, New York by virtue of Interstate's management thereof.

2. Interstate agrees to adopt, assume and be bound by all the terms and conditions of employment, both economic and non-economic in nature, of any successor collective bargaining agreement to the Industry Wide Agreement between the Union and the Hotel Association, which expires on June 30, 2006 ("IWA") negotiated between the Hotel Association and Union, which shall serve to extend, supersede and/or modify the IWA, on its own behalf and on behalf of any hotel or concessionaire which it currently or hereinafter owns, operates or manages in the New York City area.

3. The Union agrees that the Park Central Hotel shall be permitted to lease out part of its property to Starbucks who will operate a retail store on said property. Provided that there shall be no entrance or access to Starbucks from inside the Hotel and that no Starbucks employees will perform any duties or functions currently performed by bargaining unit members, Starbucks will not be considered a concessionaire within the meaning of the IWA nor subject to the accretion and area standards provisions of the IWA.



4.  Any disputes regarding the interpretation or application of this Agreement shall be subject to the grievance and arbitration provisions of the IWA, which are incorporated herein by reference.

Dated: January 15, 2004

NEW YORK HOTEL AND MOTEL
TRADES COUNCIL, AFL-CIO

By: [signature]

INTERSTATE HOTELS AND RESORTS

By: [signature] 1/15/04
Paul Becker

Union 00145

AGREEMENT entered into so as to be effective July 1, 2001 between the HOTEL ASSOCIATION OF NEW YORK CITY, INC., in its own behalf and in behalf of the HANYC BARGAINING GROUP HOTELS[1] (hereinafter collectively referred to as the EMPLOYER or the ASSOCIATION), and the operators of hotels and motels who are active members of the ASSOCIATION and with respect to whom the UNION (as herein below described) presently has contractual relations, and the operators of hotels, motels, and concessionaires with respect to whom the UNION may be hereafter designated as sole collective bargaining agent for the employees of such hotels, motels, and concessionaires; and who shall become parties hereto by agreeing to this Agreement, each and every such hotel, motel, and concessionaire being hereinafter referred to as the EMPLOYER, and the NEW YORK HOTEL AND MOTEL TRADES COUNCIL, AFL-CIO, hereinafter called the UNION, in its own behalf and in behalf of its members, now employed or hereafter to be employed by the EMPLOYER.

## WITNESSETH:

WHEREAS, the ASSOCIATION is an organization whose active members are engaged in the hotel business in the City of New York and one of whose objects is to promote fair and harmonious labor relations between hotel keepers and their employees, and

WHEREAS, the parties hereto are signatories to a Collective Bargaining Agreement signed June 26, 1985, as amended by a Memorandum of Understanding signed January 30, 1990 (hereinafter collectively referred to as the "1990 Agreement"), which 1990 Agreement by its terms, expired on June 30, 1995, and was extended by the parties to midnight July 4, 1995, and further amended by a Memorandum of Understanding signed July 5, 1995 (hereinafter collectively referred to as the "1995 Agreement"), which Agreement by its terms, expired on June 30, 2001;

WHEREAS, the parties hereto, desiring to cooperate to stabilize such labor relations by establishing general standards of wages, hours of service and other conditions of employment, and providing arbitral machinery whereby disputes and grievances between employers and employees may be adjusted without resort to strikes, lockouts or other interferences with the continued and smooth operation of the hotel business, have agreed,

---

[1] A list of HANYC Bargaining Group Hotels has been provided by the Association.

7

management or operational control of the Hotel or Concessionaire such that the party ("transferee") assuming such majority ownership, management or operational control must assume and be bound in writing to this Agreement.

Not less than five (5) business days prior to the closing of the transaction, the EMPLOYER shall give the UNION notice in writing of the transaction between the EMPLOYER and the transferee and the notice to the UNION will provide the full and complete identity of the transferee, together with a duly executed copy of the pertinent portion of the transaction agreement between the EMPLOYER and the transferee pursuant to which the transferee agrees to assume this Agreement.

Said notice will be held by the UNION in strict confidence and the UNION, upon request of the EMPLOYER, will agree to a confidentiality pledge upon terms mutually acceptable to the EMPLOYER and the UNION, provided however that such confidentiality pledge will be ineffective upon the EMPLOYER's violation of this Section 59. If the UNION is provided with a signed copy of the portion of the agreement where the transferee agrees to assume this Agreement, the UNION will not contact the transferee prior to the closing.

The EMPLOYER and UNION agree that if a determination is made by the Impartial Chairman that a violation of Section 59 has occurred, then in such case, the violation will be deemed to be irreparably harmful to the UNION and its members. In such event, the UNION may seek such relief as is necessary to redress and remedy such violation and irreparable harm, including but not limited to the award of monetary damages and/or injunctive relief either from the Office of the Impartial Chairman, the National Labor Relations Board, a court of competent jurisdiction or such other forum as deemed appropriate by the UNION.

## ACCRETION AND NEUTRALITY/CARD CHECK

60.  (A) Accretion

EMPLOYER agrees to the accretion of any and all hotel or concessionaire properties which come to be owned and/or managed in the New York City area to the bargaining unit(s) presently or hereafter covered by the Industry Wide Agreement or any successor collective bargaining agreement thereto, and that all of the terms and conditions set forth in the Industry Wide Agreement or its successor shall be immediately applicable to the accreted bargaining unit(s).

The parties acknowledge that they have negotiated and exchanged valuable consideration in reliance upon the lawfulness and validity of their agreement but recognize the complexity and change inherent in the legal doctrine of accretion. Nevertheless, in the event that any accretion at a hotel or concessionaire pursuant to these provisions, applied to the fullest extent of that legal doctrine, should be ruled ineffective, invalid, or unenforceable by competent legal authority, then the parties hereby agree that the neutrality and card count agreement annexed hereto as Addendum IV shall apply to that hotel or concessionaire. For the purposes of this provision, "competent legal authority" shall mean the Office of the Impartial Chairman, the Regional Director for Region 2 or 29 of the National Labor Relations Board ("NLRB"), the United States District Courts for the Southern or Eastern Districts of New York, or the United States Court of Appeals for the Second Circuit.

The parties agree that they shall meet to review and discuss such particular facts and circumstances as either party may contend warrants mutually agreed upon revisions to the provisions of the Industry Wide Agreement, or successor collective bargaining agreement as the case may be.

(B) Neutrality/Card Check

In addition to and without limiting the other provisions of this Section 60, EMPLOYERs shall abide and be bound by the neutrality and card check provisions annexed hereto as Addendum IV and incorporated herein by reference.

## MAINTENANCE AND ELECTRICAL WORK

61.  It is intended that employees to be classified as in the "Maintenance Department" shall include those engaged in doing plastering, mason work, tile setting, lathing and cement work; carpentry; plumbing and steamfitting, upholstering and mattress making, painting, furniture varnishing and paperhanging; operating and maintaining house radio systems; mechanical work on elevators; machine work, locksmithing and key work; silversmithing, coppersmithing and tinsmithing, boiler repair work.

The painting, decorating and paperhanging includes the service

70  71

after a union is decertified as bargaining agent. All contributing employers are urged to obtain legal advice as to the foregoing withdrawal liability.

## ADDENDUM IV

Company Name

Address

Dear _____:

This letter agreement will confirm the discussions we have had regarding the procedures to be followed by the New York Hotel & Motel Trades Council ("Union") to organize certain employees at hotels and concessionaires at which Company acquires an ownership, management or control interest and the Union does not have representational rights ("Hotel"), and various other matters, including the resolution of disputes related to such organizational drive and/or the terms of this letter agreement ("Agreement") and any subsequent collective bargaining agreement.

1. Use of Impartial Chairman

The Impartial Chairman of the Hotel Industry of New York City ("Impartial Chairman") will conduct a "card count" to determine whether the Union has obtained valid cards from a majority of full-time and regular part-time employees of the Hotel, employed in job classifications listed in Schedule A to the Industry Wide Agreement between the Union and the Hotel Association of New York City Inc. ("IWA"), designating the Union as their representative for purposes of collective bargaining (the "Cards") and to certify the result of his card count, all in accordance with the procedures set forth in Section III below. Full-time and regular part-time employees of the Hotel employed in job classifications listed in Schedule A shall be referred to throughout this Agreement as "Employees".

The Impartial Chairman also will resolve any and all disputes of any kind whatsoever arising out of this Agreement, or concerning the meaning or interpretation of any and all matters discussed herein, including but not limited to the terms and provisions of any collective bargaining agreement entered, or to be entered into, by and between the Hotel and the Union. Any costs incurred by the parties in instituting proceedings before the

111

Impartial Chairman, or defending against the same, shall be the responsibility of the respective party. Costs charged by the Impartial Chairman shall be shared and paid equally by the parties. Any arbitration award or decision issued by the Impartial Chairman, written or otherwise, shall be final and binding upon the parties, and subject to the provisions of Article 75 of the New York Civil Practice Law and Rules ("CPLR") including, but not limited to, the procedures to vacate or modify an award pursuant to Section 7511 of the CPLR, and shall be enforceable in a court of competent jurisdiction.

2. Union Access to the Hotel

The Union will begin its organization of the Hotel's employees at any time upon notice to the Hotel's General Manager. The Union will be permitted to have its organizers or representatives enter the Hotel to meet with Employees during the Employees' non-working times (for example, before work, after work, and during shift changes, meals and breaks) and/or during such other periods as the parties may mutually agree upon in writing. The Union may engage in organizing efforts in non-public areas of the Hotel such as the Employee mealrooms and locker rooms or such other non-public areas as the parties may mutually agree upon.

Within three (3) days following receipt of the above described written notice of intent to organize Employees, the Employer will furnish the Union with a complete list of such Employees, including both full and part-time Employees, showing their job classifications and departments, work schedules, wages, and benefits, and the home addresses and telephone numbers of all Employees. Thereafter, the Employer will promptly provide updated lists for the duration of the organizing drive.

There shall be no lockouts of the Employees by the Hotel and the Union shall not cause any disruption of work by the Employees during the organizing activity, nor shall there be any picketing, strikes, slow downs or other work stoppages at the Hotel by or caused by the Union for any purpose, including organizing, contract negotiations, dispute publication or enforcement of the terms of this Agreement. The "no lockout, no strike" provisions hereof shall not apply in the event either party fails to abide by an award or decision of the Impartial Chairman within three (3) business days after issuance. Both the Hotel and the Union agree to respect the National

112

Labor Relations Act ("NLRA") Section 7 rights of employees during the Union's organizing drive, and neither party shall, or be required to, act in contravention of those rights. The Hotel specifically agrees that its supervisory employees, its agents and/or its representatives will not act or make any statements that will directly or indirectly imply the Hotel's opinion as to whether or not the employees should support the Union or as to the reputation of the Union or any of its officers and affiliate local unions or as to the reputation of any of the officers of the Union's affiliate local unions and/or their parent unions.

3. Determination of Majority Status

At any time after the commencement date of the Union's organizing effort, the Union may request that a card count be conducted by the Impartial Chairman. The Union shall initiate that process by advising the Hotel's General Manager in writing ("Notification Letter") that it represents a majority of the full-time and regular part-time employees employed by the Hotel in the job classifications set forth in the IWA Schedule A. The date of the Union's Notification Letter shall be the date ("Notification Date") used for purposes of determining the composition of the list of the names of the Employees to be furnished by the Hotel to the Impartial Chairman, so that all full-time and regular part-time Employees of the Hotel employed on or before the Notification Date will be the only Employees whose names will appear on the list.

Within forty-eight (48) hours of the delivery of the Notification Letter by the Union to the Hotel indicating its majority status, the Union shall notify the Impartial Chairman in writing that his services are requested for purposes of conducting a card count. The Union shall immediately confirm to the Hotel's General Manager that the Impartial Chairman has retained jurisdiction of the card count proceeding. As soon as practicable thereafter, but in any event no later than seven (7) days after the date of the Union's written card count request made to the Impartial Chairman, the Union shall furnish to the Impartial Chairman the Cards it has obtained from the Employees, and the Hotel shall furnish the Impartial Chairman the list containing the names, job classifications and social security numbers of Employees employed as of the date of the Union's Notification Letter (with a copy to the Union) together with copies of official employment documents contain-

113